GEORGE F. CAMPBELL, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD CO., Appellant.

In the Kansas City Court of Appeals, May 1, 1922.

1. **NEGLIGENCE: Pleading: Ordinance Requiring Ringing of Bell on Locomotive, Held Admissible Under the Pleadings.** In an action for damages to automobile truck struck by engine, where petition charged general negligence as to rate of speed and failure to give warning, as well as negligence under the humanitarian doctrine, the court did not err in admitting in evidence a city Ordinance requiring the continuous ringing of the bell on a locomotive while running within the city.

2. ————: **Nonobservance of City Ordinance Requiring Ringing of Bell on Engine Continuously While Running in City, Held Negligence per se.** Nonobservance by a railroad company of a city ordinance requiring ringing of bell on engine continuously while running in city is negligence *per se*.

3. ————: **Evidence: Under Evidence Violation of Speed Ordinance Held for Jury.** Where there was conflicting evidence as to whether locomotive exceeded the speed limit in violation of a city ordinance, the question was one for the determination of the jury.

4. ———: ———: **Speed Ordinance Held Applicable to Engines Un-attached and Running Alone.** In an action to recover damages to automobile truck struck at crossing by engine, an ordinance regulating speed where petition alleged violation thereof was properly admitted against the objection that the ordinance did not contemplate the regulation of speed of "light" engines, the term "light" in railroad parlance meaning an engine unattached and running alone.

5. **APPEAL AND ERROR: Where Proximate Cause was a Question for Jury, the Finding of Jury on Question of Proximate Cause Will not be Disturbed if Supported by Substantial Evidence.** Where the question of proximate cause was a question for the jury under the evidence and the instructions given, and there was substantial evidence to sustain such finding, the appellate court will not disturb it.

6. **NEGLIGENCE: Demurrer: Humanitarian Rule: Court Held Justified in Refusing to Sustain Defendant's Instruction Declaring There Could be no Recovery Under Humanitarian Rule.** Where evidence showed that fireman on defendant's locomotive saw plaintiff's truck moving slowly toward crossing where collision occurred, and it stopped and started over the track when the engine was within thirty feet of the truck, and he notified the engineer of the proximity of the truck, and the testimony of plaintiff tended to show that the engine was sixty or seventy feet north of the point where the truck was going on the railroad track and that it moved upon the track and stopped, and it appeared that the engine was moving at the rate of fifteen to twenty miles per hour and could have been stopped within twenty-five or thirty feet, the court was justified in refusing defendant's instruction declaring there could be no recovery under the humanitarian rule.

7. **INSTRUCTIONS: Evidence Held to Justify Instruction Submitting Question of High and Dangerous Speed.** Where evidence showed automobile truck, with its load, weighed seven and one-half tons and when struck by locomotive was turned over at a street intersection, *held*, such testimony furnishes sufficient basis for the jury to reasonably infer that the speed of the engine was high and dangerous, and justified an instruction directing a recovery in the event the jury found the engine was running at a high and dangerous rate of speed, or at a greater rate of speed than ten miles per hour.

8. ———: **The Use of the Word "Or" in Instruction Held not to be Misleading.** In a suit to recover damages to an automobile truck struck by engine at street intersection, an instruction permitting recovery if speed of engine was high and dangerous, or if running

at a greater rate of speed than ten miles an hour, *held* not misleading, the use of the word "or" in instruction being used in the sense of "to-wit."

9. ————: **Instruction on Ringing of Bell Held Proper.** In an action to recover damages resulting from collision at street intersection between automobile truck and engine, an instruction *held* not erroneous as directing a recovery if jury believed the bell was not ringing continuously, regardless of whether the absence of such ringing contributed in any way in causing the accident.

10. **NEGLIGENCE: Imputable Negligence: Where There Was no Element of Principal and Agent, Master and Servant, or Partnership, Existing Between Bailor and Bailee, Negligence of Bailee is Not Imputable to Bailor.** Where plaintiff, bailor, hired his truck to another, the bailee, whose driver was in charge of truck when damaged by defendant's locomotive, the negligence of the driver of truck was not imputable to plaintiff, bailor, so as to constitute a defense.

Appeal from the Circuit Court of Buchanan County.— *Hon. L. W. Vories,* Judge.

AFFIRMED.

*Guitar & Innis* for respondent.

*H. J. Nelson, J. A. Lydick, J. G. Trimble* and *E. M. Spencer* for appellant.

ARNOLD, J.—This is a suit for damages to an automobile truck which was struck by an engine operated by defendant, its agents and servants. The accident occurred at the intersection of Fifth and Seneca Streets in the City of St. Joseph, Mo., on December 6, 1920.

Plaintiff was the owner of a two and one-half ton "Indiana" automobile truck, upon which was constructed a steel body especially equipped for hauling and dumping heavy loads. At the time of the accident in question, plaintiff had hired his said truck to one L. H. Waddell, at a rental of $1 per hour for the time used. Wad-

dell had a contract for hauling asphalt from a plant situated on the south side of Seneca Street and on the west side of Fifth Street in said city.  He employed Elmer Nye to drive the truck.

Seneca street runs east and west and Fifth street north and south.  The asphalt plant sets back from the south line of Seneca street about thirty feet and about forty-six feet west of the west line of Fifth street.  The railroad tracks occupy all of Fifth street at its intersection with Seneca street.

The trucks were backed from Seneca street through an entrance, or gate, to the loading place which was partly under the asphalt plant building.  When loaded the truck moved directly north until it passed through the gate into Seneca street, thence turning east, and would travel about forty-six feet before reaching the railroad track.  From a point north of Seneca street the railroad track ran to the southeast on a slight curve, straightening south into Fifth street, at about the south line of Seneca street.  A little west of the asphalt plant, and north of Seneca street was a warehouse which obstructed the view of an engine coming from the northwest until within 215 feet of the crossing where the accident occurred, and for that distance the view was unobstructed from the loading place to the track.

On the occasion in question the engine on being detached from the train ran northwest through what is called the "middle yards" and then started backing on its way to the roundhouse.  The engine was equipped with an automatic bell which, when started ringing, continued to ring until the power was shut off.  As the engine was proceeding south the engineer was on the east side and the fireman on the west of the engine.  About the same time the automobile truck passed into Seneca street and moved toward the railroad track at about three or four miles per hour.  The engine, coming from the north, was moving at a rate variously estimated at from ten to twenty miles per hour.  When the engine was within sixty to seventy feet of the crossing, the

truck moved onto the track and stopped, the driver thereof jumping therefrom. The corner of the locomotive tender struck the truck, tipped it over and hurled it across Seneca street and against the fence at the southwest corner of the intersection of the two streets mentioned.

The amended petition pleads section 1052 of the revised ordinances of the City of St. Joseph, 1905, as amended by general ordinance No. 1326, as follows:

"No railway company shall by itself, agents or employees run any passenger train upon or along any railway track within the corporate limits of the city at a greater speed than ten miles per hour; nor shall any such corporation by itself, agents or employees run any freight car or cars upon or along any railway track within said city at a greater rate of speed than six miles per hour."

Section 1057 of the same ordinances also is pleaded, as follows:

"The bell of each locomotive engine shall be rung continuously while running within said city."

Damages in the total sum of $2900 are prayed. The answer was a general denial. The cause went to trial to a jury, resulting in a verdict for plaintiff for $1650. A motion for new trial and in arrest were duly filed and by the court overruled. Defendant appealed.

In its first assignment of error defendant urges that the court erred in admitting in evidence section 1057 of the ordinances of the city of St. Joseph, which relates to the ringing of the bell on the locomotive, for the reason that plaintiff confined himself to a case under the humanitarian, or last chance, doctrine, neither proving nor claiming negligence of defendant until after the employees of the latter had seen, or could have seen, the peril of the automobile truck. We do not accept this position of defendant as tenable. The petition charges negligence, as follows:

"that defendant's agents and servants in charge of said locomotive engine carelessly and negligently ran

Campbell v. C., B. & Q. R. Co.

said engine at a high and dangerous rate of speed and at a greater rate of speed than ten miles per hour as it approached and was crossing said Seneca Street; that defendant's agents and servants in charge of said engine carelessly and negligently failed to sound any bell or to give any warning of the approach of said engine to said crossing; that defendant's agents and servants in charge of said engine carelessly and negligently failed to ring the bell on said engine continuously while it was running in said city of St. Joseph and was approaching said crossing in violation of section 1057 of the ordinances of the city of St. Joseph as herein set out; and that defendant's agents and servants in charge of said engine carelessly and negligently failed to stop said engine or to slacken the speed thereof after they saw or in the exercise of ordinary care could have seen that plaintiff's automobile truck was on or near defendant's tracks in a position of peril in time by the exercise of ordinary care to have stopped said engine or to have slackened the speed thereof and to have thus avoided said engine colliding with plaintiff's automobile truck.''

Thus it will be seen that the petition charges general negligence, as well as negligence under the humanitarian doctrine. There was substantial evidence introduced by plaintiff to support the allegation that the bell was not ringing, which defendant's testimony tended to contradict. It was therefore a question for the jury and the admission of the ordinance in evidence was not error.

It must be conceded that it was the duty of defendant, through its agents and servants, to observe the requirements of the city ordinances by sounding the bell as the engine was being moved through the city. Such non-observance of the ordinances would be negligence *per se*. [Reed v. Railroad, 107 Mo. App. 238; Jackson v. Railway, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 246; Edwards v. Railway, 94 Mo. App. 36.]

Defendant next urges error in the admission in evidence of section 1052, of the ordinances of St. Joseph,

as above quoted. The testimony of the engineer and fireman in charge of said engine shows they had been instructed that the ordinance prohibited the operation of the engine at the point where the accident occurred, at a greater rate of speed than ten miles per hour, and that the rules of defendant company made this requirement. There was evidence which was contradicted by defendant's witnesses that the locomotive was exceeding the speed limit at the time the accident occurred. This, too, was a question for the jury's determination. The ordinance (Sec. 1052) was properly admitted in evidence, and even if it were improperly admitted, under the conditions presented in this case, defendant's rights could not have been prejudiced thereby.

But defendant's chief objection to the admission of this section, 1052, seems to be, and it is so argued, that the ordinance does not contemplate the regulation of the speed of "light" engines. The term "light" in railroad parlance meaning an engine unattached and running alone.

We cannot accept defendant's argument on this point as sound. It is a common law of physics that cars and trains are not operated without some kind of motive power. It must be concluded that the framers of the ordinance had in contemplation engines attached or unattached, as well as cars.

"Ordinances limiting the rate of speed of trains within the corporate limits apply to all places within these limits . . . and to detached locomotives not hauling cars . . ." [33 Cyc. 670, and cases therein cited.]

For its third assignment of error, defendant contends that the court should have sustained its demurrer and, in support thereof, asserts that the negligence of, the driver of the automobile truck was the proximate cause of the damage.

In this respect it needs only to be said that the question of proximate cause was a question for the jury under the evidence and the instructions given, and their

211 M. A.—22

finding was against defendant on this point.   There was substantial evidence to sustain such finding and this court will not disturb it.

Under point 4, defendant claims there could be no recovery under the humanitarian rule.

The fireman of the locomotive testified he saw the truck moving out of the gate of the asphalt plant, headed north, and saw it turn east, moving slowly, toward the crossing where the accident occurred and that it stopped and started over the track; that the engine then was within thirty feet of the truck and that he notified the engineer of the proximity of the truck.   The testimony of plaintiff's eye-witness tends to show that the engine was sixty or seventy feet north of Seneca street and at least that far north of the point where the truck was going on to the railroad track, and that it moved upon said track and stopped.   It was further in evidence that the engine was moving at the rate of fifteen to twenty miles per hour and could have been stopped within twenty-five or thirty feet.   In view of this testimony, the court was justified in refusing to sustain defendant's instruction declaring there could be no recovery under the humanitarian rule.

For the sake of continuity we will now consider defendant's assignment of error No. 8, which is directed to plaintiff's instructions Nos. 1 and 2.   It is urged (a) that paragraph one of instruction No. 1, directs a recovery in the event the jury found the engine was running at a high and dangerous rate of speed, *or* at a greater rate of speed than ten miles per hour, regardless of the fact that there was no testimony that the speed was high and dangerous, and no testimony that the speed of the engine in any way contributed to the accident.

The speed ordinance (sec. 1052, supra), as well as the rules of defendant, fixed the maximum speed at which locomotives would be permitted to operate in safety to the public, at ten miles per hour.   There was testimony introduced by plaintiff to the effect that the engine was

running, at the time of the accident, at a speed of ten to twenty miles per hour.

The evidence shows that the truck weighed 7800 pounds and that it was loaded with 7200 pounds of asphalt, thus making a total weight of seven and one-half tons. It was struck, turned over, twisted, bent and thrown to the southwest corner of the intersection of the two streets where the accident occurred. This testimony furnishes sufficient basis for the jury reasonably to infer that the speed of the engine was high and dangerous.

Defendant's objection to the use of the word "or" in instruction No. 1, is not well taken. Webster defines the word *or* as being properly used as joining "alternative terms expressing unlike things or ideas, or different terms expressing the same thing or idea, as, this is a sphere or globe." Plaintiff explains that in the instruction complained of, the word was used in the sense of *to-wit*. We hold, as was held in Garvey v. Marks, 134 Mo. 1, 9, that "the two propositions, coupled by the disjunctive conjunction are in effect the same, stated in different words." Our conclusion is that the instruction in this respect was not error and that the jury could not reasonably have been misled thereby to defendant's prejudice.

(b) The words "high and dangerous" as used in the instruction are of simple meaning and ordinary use and require no explanation or definition. Citations are unnecessary. (c) A careful reading of paragraph 2, of instruction No. 1, fails to reveal any grounds for the assertion of defendant that said paragraph directs a recovery if the jury believed the bell was not ringing continuously, regardless of whether the absence of such ringing contributed in any way in causing the accident. The paragraph referred to reads as follows:

"That defendant's agents and servants in charge of said locomotive failed to ring the bell on said locomotive continuously while approaching said Seneca street. . ."

It will be noted that the words "while approaching said Seneca Street" limit the time during which defend-

ant failed to ring the bell, and the clause is not subject to the broad construction attempted to be placed upon it by defendant.

(d)    Under this subdivision of point 8, defendant urges that paragraph 3, of instruction No. 1, is erroneous because it directs a recovery under the humanitarian doctrine, regardless, of the fact that plaintiff's testimony showed it was not a case for the application of that rule. We are unable to agree with counsel in this position. The petition charges and the proof substantially shows a case under the humanitarian rule. The instruction in this respect was proper.

Subdivisions *e* and *f* of point 8, are directed to the same question and will be considered together. The objections are that the instruction directs a recovery regardless of the negligence of the driver of the automobile truck, and that it relieves plaintiff from all responsibility for the negligence of the driver while plaintiff was receiving compensation for the use of the truck.

This point directs our attention to the case of Spelman v. Delano, 177 Mo. App. 28, decided by this court, in which it was held, in effect, that in a suit by a bailor of personal property against a third party for damages to the property while in the possession of the bailee, if there is no element of principal or agent, master and servant, or of partnership, existing between the bailor and bailee, then contributory negligence of the bailee is not imputable to the bailor so as to constitute a defense. The opinion also holds that the rule is different if the bailment is of such character as to involve any of the elements above mentioned. In the case at bar, it is admitted that plaintiff was a bailor for hire, and it is not shown that any of the elements constituting an exception to the rule declared in the Spelman case are involved.

The very able counsel for defendant argues that the rule in the Spelman case is wrong. This we cannot concede. It is true that formerly there was quite a respectable number of appellate decisions in some of the states

which held to the contrary, but as announced in 6 A. L. R. 317:

"At this time the weight of authority is decidedly in favor of the rule that in bailments other than for carriage the contributory negligence of the bailee is not imputable to the bailor where the subject of the bailment is damaged by a third person."

The facts in the case at bar are not essentially different from those presented in the Spelman case. There is no charge that plaintiff was in any way negligent in hiring his truck to Waddell, the bailee, nor is there any charge that the driver of the truck was in the employ, or was the servant, of plaintiff. Notwithstanding the unique and attractive argument of defendant's counsel in opposition to the rule announced in the Spelman case, we are unconvinced that said rule is not good and wholesome law. For these reasons we hold that instructions Nos. 1 and 2, for plaintiff, were proper in the respect to which this objection is directed.

Finally, defendant complains that the court erred in refusing to give defendant's instructions E to N, inclusive. As these instructions are based upon defendant's theory of the case, and all the points raised therein already have been determined against its contention, they need not be further discussed here. Also, defendant charges error in the action of the court in refusing defendant's proffered instructions numbered 2 to 6, inclusive. These instructions were based upon the theory of defendant that the negligence of the driver of the truck, under the facts in evidence, was attributable to plaintiff. Under our rulings above relative to this question, the refusal of said instructions was not error. An examination of these instructions as modified by the court shows the modifications were made to conform to the facts as disclosed by the evidence and the law applicable thereto, as above declared. We hold the action of the court relative thereto was not error.

We find no reversible error in the case. The judgment is affirmed. All concur.