SIEGRIST BAKERY COMPANY *v.* E. GRAY SMITH AND MRS.
HUNTER ORR.

(*Nashville,* December Term, 1930.)

Opinion filed March 14, 1931.

J. L. REYNOLDS, for plaintiff in error.

HUMES & ARMISTEAD and L. M. DAVIS, for Mrs. Hunter Orr.

SEAY, STOCKELL, EDWARDS & KEEBLE, for E. Gray Smith,

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the Siegrist Bakery Company to recover damages to a delivery truck and its contents sustained in a collision with an automobile, the property of Mrs. Hunter Orr, but driven at the time of the accident by a chauffeur in the general employ of E. Gray Smith. It is conceded that there was negligence in the operation of the automobile and the controversy is as to whether Mrs. Orr or Smith is liable. The trial judge and the Court of Appeals held that Mrs. Orr alone was liable on the theory that the chauffeur was a loaned servant, under her control, when the damage was inflicted.

Mrs. Orr was the owner of a Packard car which she had purchased from Smith. He was the Packard agent in Nashville and maintained a garage where he sold these cars and repaired them. He usually did the repair and service work on Mrs. Orr's car.

On the day of the accident Mrs. James Grigsby, a daughter of Mrs. Orr, drove the Packard car to the Smith garage. Mrs. Grigsby testified that her mother had asked her to take the car by the garage and find out what was the trouble with it. Mrs. Grigsby took the car to the garage, and testified: "They offered to bring me home, and they did, and brought the car back to the garage." Smith's employee went home with Mrs. Grigsby and undertook to bring the car back to the garage himself. The collision occurred as this employee was on his way back to Smith's place. Mrs. Grigsby further testified that it was a part of Smith's service to drive the owner of a car home and bring the car back, and that she left the car and gave control of the car to Smith's employee in front of her mother's house.

The foregoing is about all the evidence in the record that is material to the inquiry before us. Smith did not take the stand and Mrs. Grigsby's statements are in no way contradicted.

Counsel and the Court of Appeals seem to attach some importance to the failure of the evidence to show a definite contract between Mrs. Orr and Smith by which the latter should undertake repairs on the car. It is said that, insofar as the evidence discloses, the automobile was left or to be left with Smith for examination, and that further repairs to be undertaken depended on subsequent negotiations between Smith and Mrs. Orr.

 It does not appear to us to be material whether, or not, the owner and the garage man had concluded a contract for repairs on the car. The determinative question is whether, or not, bailment of the car by the owner to the garage man had been accomplished. It makes no difference, whether the rights of third parties are in-

volved, whether the bailment was for inspection or for repairs—whether it was gratuitous or for a reward. We do not think, however, the bailment, if any, was gratuitous. The proof showed that Smith was in the habit of doing Mrs. Orr's repair work and if the inspection indicated that repairs were necessary, naturally Smith would have been employed to make these repairs. Such inspection was an incident to Smith's repair work and in furtherance of that work.

█ When an automobile is turned over to an employee of a garage man for repairs, under circumstances like those of this case, it has been held in several well considered cases that the bailment is complete.

In *Perry* v. *Fox*, 156 N. Y. Supp., 369, the owner of the car, one Fox, drove from his home to Hill's garage and arrangements were made between Fox and Hill for some repairs to the car. Hill then got into Fox's car and Fox drove the car to his club, where he turned the car over to Hill to be driven back to the garage for the repairs mentioned. On the way back a third party was injured by reason of Hill's negligent driving and the question arose as to the liability of Fox for the accident. He was acquitted of responsibility. The court said:

"It is undisputed that the car was turned over to Hill at the Country Club. It is undisputed that Hill had an established separate business, that of keeping a garage for the repair of automobiles. When Fox delivered the automobile to Hill, he parted with all control over it. He retained no supervision over Hill as to the manner or method of the car being put in repair, or being brought to the repair shop of Hill. In my opinion, the sole relation existing between Fox and Hill was that of a bailor and bailee. It is a matter of daily occurrence for a

garage man to take possession of automobiles either at the owners' residence, on the road, or at the bailee's shop. As to injuries to third persons caused by the negligence of the bailee, there is no liability upon the part of the bailor.''

In *Reinhardt* v. *G. W. Tisdale, Inc., et al.* (N. J.), 133 Atl., 523, a physician drove his car to a garage to have certain repairs made. It was found that a longer time would be required for making the repairs than the physician could spare his car. The physician had another car in the city and it was agreed that an employee of the garage would drive the doctor to where his other car could be procured. This was done. The doctor took his other car and went out in it to make his calls and the employee of the garage undertook to bring the first car back to the shop for repairs. On his way back to the garage, by reason of negligent operation of the doctor's car by the employee of the garage, injuries were inflicted on a third person. The garage company was held liable. It was said of the employee that

''He was clearly doing the company's work and actually engaged in serving it when on his way with the automobile to its garage for the purpose of repairs.''

To like effect see *Stamper* v. *Jesse* (Ky.), 250 S. W., 1008.

Mrs. Grigsby's evidence was that when she went to the garage for the purpose of having the car inspected ''they offered to bring me home, and did, and brought the car back.'' We think this was equivalent to an offer to accept the car at the owner's home and bring it back for inspection at least; that Mrs. Grigsby was correct, as a matter of law, in saying that she gave control of the

car to Smith in front of her mother's house. The bailment was effected there.

 Having determined that the relation of bailor and bailee between Mrs. Orr and Smith arose when the car was turned over to Smith's employee in front of Mrs. Orr's home, we think there is no question of lent servant in the case. One reason that a bailor is not liable for a bailee's negligence is that the bailor has no control over the servants of the bailee. Neither negligence nor, in this jurisdiction, contributory negligence of the bailee or his servants is imputable to the bailor. *Hunt-Berlin Coal Co.* v. *McDonald Coal Co.*, 148 Tenn., 507, 3 R. C. L., 146, 6 C. J., 1151; *Sea Ins. Co. of Liverpool* v. *Vicksburg S. & P. R. Co.*, 159 Fed., 576, 17 L. R. A. (N. S.) 925; *New Jersey Electric R. Co.* v. *New York L. E. & W. R. Co.*, 61 N. J. L., 287, 43 L. R. A., 849.

Cases relied on by counsel for Smith are readily distinguishable.

*Jimmo* v. *Frick* (Pa.), 99 Atl., 1005, was a case in which the owner stored his car at a garage and under contract with the garage employed a chauffeur from it at 75¢ an hour to drive the car when the owner desired to take it out. An accident happened while the car was out driven by a chauffeur so employed. The court said the relation of bailor and bailee existed between the owner and the garage for the purpose of storage of the car; that the garage had no authority to operate the car; that the operation of the car was by the owner through a chauffeur paid by him for that service.

There was no question of bailment in *Janik* v. *Ford Motor Co.*, 180 Mich., 557, 52 L. R. A. (N. S.), 229. The owner there bought a car from a garage and, being an inexperienced driver unfamiliar with driving in con-

gested streets, asked the garage for a chauffeur to go with him and pilot him to the city limits, from which place he would then drive the car to its destination. There was clearly a delivery of the car to the purchaser at the garage and the chauffeur going out of the city with the purchaser was under the latter's control and direction.

In *Halloway* v. *Schield,* 294 Mo., 512, 243 S. W., 163, an employee of the garage in which a car was regularly stored was picked up by the owner to bring the car back to the garage from the owner's home. A third person was injured by reason of this employee's negligence. The owner of the garage testified that it had been stipulated between him and the owner of the car that such services as this should be rendered entirely at the latter's risk. Upon these facts the court held that it was a question for the jury to say whether the employee aforesaid was acting for the owner of the car or the owner of the garage at the time of the accident.

It seems, however, under the authorities that if a keeper of a garage where a car is stored expressly contracts to deliver the car at such place as may be designated by the owner and to call for and return the car to the garage, an employee of the garage while on such trips is not regarded as a loaned servant but the keeper of the garage is held liable for his negligence. *Sweetnam* v. *Snow,* 187 Mich., 414, L. R. A., 1916B, 757; *Ouellette* v. *Superior Motor & Machine Works,* 157 Wis., 531, 52 L. R. A. (N. S.), 299.

As heretofore pointed out, Mrs. Grigsby testified that it was part of Smith's service to drive the owner of the car home and bring the car back. Smith does not deny this and such service is, of course, common with garage men.

In *Chamberlain* v. *Lee,* 148 Tenn., 637, and *Dedman* v. *Dedman,* 155 Tenn., 241, it was held proper to leave it to the jury to say whether or not a servant had been loaned, so as to free his general employer of responsibility for the acts of such servant, under the particular facts of those cases. In the case before us there is no conflict whatever in the evidence, nor do we think any state of facts is presented from which contradictory inferences might be drawn. We accordingly feel free to decide the case as a matter of law.

For the reasons stated, the judgment of the lower courts will be reversed and a judgment entered here in favor of the Siegrist Bakery Company against E. Gray Smith, together with the costs of the cause.