**SEWELL v. NEWTON et al.**

**No. 14688.**

Court of Appeal of Louisiana. Orleans.

Jan. 29, 1934.

Thomas J. Dobbins and Harry Mayo, Jr., both of New Orleans, for appellant.

O'Niell & O'Niell, of New Orleans, for appellee Cadillac Motor Car Co.

T. M. Logan Bruns, of New Orleans, for appellee J. Mills Newton.

**JANVIER, Judge.**

This case results from an intersectional automobile collision at the corner of Valence and Daneel streets in the city of New Orleans. The cars involved were a Buick, owned and driven by plaintiff, William J. Sewell, and a La Salle, owned by Cadillac Motor Car Company and driven by Willie James, the chauffeur of J. Mills Newton, to whom the Cadillac Company had loaned the car so that the said Newton might test it in order to determine whether he would purchase it.

The accident occurred at about 9:40 o'clock on the morning of October 13, 1932. The La Salle, occupied by Newton's colored chauffeur and colored nurse, was proceeding up Daneel street, which, under the traffic ordinance of the city of New Orleans, is a one-way street, and the Buick was being driven by its owner, Sewell, on Valence street towards the Mississippi river.

Charging that the accident resulted from the negligence of the operator of the La Salle in the matter of speed, and because of his failure to accord to the Buick the right of way to which plaintiff alleges the latter was, under the city ordinance, entitled and averring that there was legal responsibility for the accident in both Newton, the employer of the chauffeur of the La Salle, and in the Cadillac Motor Car Company as owner of the said car, plaintiff seeks a solidary judgment against both said defendants.

Newton denies liability on his part, alleging that there was no negligence in his chauffeur, and asserting, in the alternative, that plaintiff, Sewell, was himself at fault, in that he, at an excessive speed, and without looking for vehicles on the intersecting street, drove his Buick into the intersection after the La Salle had already entered and pre-empted it, and after it was too late for the latter to be stopped.

The Cadillac Motor Car Company also denies that there was negligence in the chauffeur of the La Salle, and also charges that the proximate cause of the accident was the negligence of Sewell himself in the particulars to which we have already alluded, but particularly denies that it is in any way responsible for or affected by any negligence on the part of the operator of the La Salle, if there was negligence, and, in a reconventional demand, prays for judgment against Sewell in the sum of $417.07, averring that to be the amount expended in repairing the damage sustained by the La Salle.

In the district court there was judgment dismissing plaintiff's suit against both defendants, and there was further judgment in reconvention in favor of the Cadillac Motor Car Company and against Sewell in the amount prayed for, to wit, $417.07. Sewell has appealed.

Where two automobiles meet in collision, and the owner of one charges that the fault of the driver of the other was solely responsible, we often find it expedient to first examine into the acts of him who seeks recovery, because, whatever may have been the fault of the other, manifestly there can be no recovery if the party seeking redress could himself, by the exercise of reasonable care, have avoided the accident.

Here we shall first consider the evidence with regard to the acts of Sewell himself. He states that, as he neared Daneel street, he looked down that street and saw no vehicle approaching, and that, after he had entered the intersection, the La Salle, at high speed, crashed into his Buick. That he saw nothing approaching is rather conclusive proof of the fact that he did not look. Obviously the La Salle was present on the street or there would have been no accident. His explanation of his failure to see it is that it was very near to the right-hand curb. But, if so, that is where it should have been. Under the traffic ordinance of this city, and under the general law of the road of this country, an automobile should be driven on the right-hand side of the roadway.

While it is true that he asserts that the speed of the La Salle was quite excessive, the record fails utterly to show any such preposterous speed as would have been necessary had the La Salle been, when Sewell entered the intersection, so far away as to have been beyond the range of his vision. No witness estimated the speed of the La Salle at more than 35 or 40 miles an hour, and, even at this speed, to have reached the intersection in time to have been involved in a collision with the Buick before the latter crossed, it must have been only 100 or 125 feet away when the Buick entered the intersection.

While it is true that it is difficult for one who sees a fast-moving automobile approaching "head on" to estimate with precision the speed at which it is coming, it is not difficult to determine whether the speed is sufficiently great to render crossing dangerous. If the La Salle was approaching at a great rate of speed, it was negligence on the part of Sewell to attempt to cross ahead of it.

We have often considered situations similar to that presented here, and have uniformly held that, wherever the complaining party could have seen the other vehicle approaching had he looked, his failure to see constituted proof of the fact that he did not look, and his failure to look constituted negligence on his part. See Burthe v. Lee et al. 152 So. 100, decided by this court on January 15, 1934; Gibbons v. New Orleans Terminal Company, 1 La. App. 371; Murphy v. Star Checker Cab Company (La. App.) 150 So. 79; Johnson v. Item Company, Ltd., 10 La. App. 671, 121 So. 369; Pugh v. Henritzy

et al., 151 So. 668, of this court, decided December 11, 1933 and not yet reported [in state report].

Here, there was no reason why Sewell could not see the La Salle. The street 'on which it was approaching was a one-way street, so that Sewell could have devoted most of his attention to that one direction. He should have seen it. His explanation cannot be accepted.

We see no reason to enter into an extended discussion of the evidence. Our brother below believed that the witnesses who corroborated Newton's recollection of the facts were correct in their version, and, we not only find no obvious error in that finding, but, on the contrary, feel that it is borne out by a great preponderance of the evidence.

The two automobiles met at a point near the center of the intersection. The La Salle was turned from its course to the left, and reversed itself completely after the collision. The Buick swerved to the right, continued on its course across the street, mounted the curb, crossed the sidewalk, and practically demolished a brick column on the property line of the street. It could not have done this except for the fact that its speed, when it entered the intersection and when the crash occurred, was considerably in excess of that permitted by law. The corner was obstructed, and therefore, under the city Ordinance No. 13,702, C. C. S., the speed should not have been in excess of 15 miles per hour, for that ordinance in subsection 3 of article 5 provides, as we have held in Murphy v. Star Checker Cab Company, Inc., supra, that, if at such intersection a vehicle enters at a speed in excess of 15 miles per hour, the burden is on the owner or operator of that vehicle to show that under all the circumstances the speed was reasonable. Plaintiff has certainly not shown this.

It is, of course, unnecessary, since Sewell cannot recover for his injuries, for us to consider or discuss the effect of the difficulty to which defendants were put in their efforts to have him submit himself to their doctors for examination.

Since the negligence of Sewell in driving his Buick into the intersection when the La Salle could no longer be brought to a stop in time to avoid the crash was, at least, a contributing cause of the collision, so far as the owner of the La Salle is concerned, even if we assume that James, the driver of the La Salle, was also at fault, he (Sewell) was a joint tort-feasor, and, unless it be shown that the negligence of James, if he was negligent, can, as a matter of law, be imputed to the Cadillac Motor Car Company, then it can recover from Sewell for the loss which has been caused it by the collision.

In order to determine whether the negligence of James, if there was negligence on his part, can be imputed to the Cadillac Motor Car Company, we must consider the relationship, if any, which existed between them.

James was the employee of Newton. The Cadillac Motor Car Company had loaned the La Salle to Newton so that he might try it out to determine whether he desired to purchase it. At the time of the accident, it was being driven on an errand for Newton, and the Cadillac Motor Car Company had no control over James or over the car. It is now well settled that under such circumstances the negligence of the bailee or of the bailee's servant will not bar recovery by the owner for damage caused by the negligence of a third person, even if there is contributing negligence on the part of the driver of the bailed automobile.

As to the owner, the two persons whose joint fault caused the loss are joint tort-feasors, he may claim reimbursement for any loss from either or both.

In U-Drive-It-Car Company, Inc., v. Texas Pipe Line Company, 14 La. App. 524, 129 So. 565, 566, the Court of Appeal for the Second Circuit considered a case presenting facts from which arose the identical legal question now under consideration. The U-Drive-It-Car Company had rented one of its automobiles to a Mr. Powell, who, while driving it, ran it into a truck of defendant, Texas Pipe Line Company, which truck had been parked by an employee of defendant in such a way that the said parking was in violation of a city ordinance. The automobile of the U-Drive-It-Car Company was damaged, and that company brought suit against the owner of the parked truck. The defendant contended "That the contributory negligence of Powell, the driver of plaintiff's car, was in any event imputable to plaintiff, preventing his recovery." The court said: "This contention is rested upon the theory that because of the relationship between Powell and plaintiff with reference to the automobile, though it be only that of bailor and bailee, plaintiff cannot recover for the injury to the automobile because Powell's contributory negligence would prevent his recovery for injury to the automobile. There was a time when the decisions of the courts seemed to support this view of the law, but in recent years the weight of authority, we think, is decidedly to the contrary."

After a full consideration and citation of many apposite authorities, which we find it unnecessary to repeat here, the court said: "The act of negligence of defendant's servant or employee in parking the truck on a paved street in the city of Shreveport in violation of a city ordinance was negligence per se and contributed to the accident, and the contributory negligence of Powell cannot be imputed to plaintiff; therefore plaintiff

should have judgment for the damage to his automobile. * * * "

We are convinced that that view was and is correct, and, in support of it, we refer to the many authorities from other jurisdictions to which our brothers of the Second Circuit have referred and from which they have quoted. In addition, we find that text-writers are uniformly of the opinion that the negligence of the driver in such case cannot be imputed to the owner of the loaned or bailed car.

Blashfield, in his Encyclopedia of Automobile Law, vol. 1, p. 102, states the rule thus: "The modern law, supported by the weight of authority, is that the negligence of a bailee in the use of the subject of the bailment contributed to its injury can not be imputed to the bailor, so as to preclude recovery by the latter for the negligence of a third person also constituting a proximate cause of the injury, unless such bailor or bailee also sustain the relation of employer and employee, or of principal and agent, or a partnership, or family relation exists, and not then unless the bailee is acting within the scope of his employment."

The following quotation is taken from Corpus Juris, vol. 45, p. 1027: "The weight of authority now supports the view that the negligence of the bailee is not imputed to the bailor where the latter does not have control, or the right and duty to exercise control, of the conduct of the bailee, with respect to the acts or omissions which caused the injury to the thing bailed."

Huddy, in his work on Automobile Law, vol. 5, § 153, states the rule as follows: "The weight of authority, however, seems to be that contributory negligence of the bailee is not imputable to the bailor in such a case. So, too, the negligence of the servant of the hirer is not imputed to the owner. The theory on which the majority rule is based is that, since the bailor is not responsible to third persons for the negligence of the bailee, the negligence of the bailee should not be imputed to the bailor, so as to absolve third persons from liability to the bailor for injury to his property in the hands of the bailee."

The law is stated by Berry in his work, "The Law of Automobiles," vol. 2, § 1446, thus: "The negligence of a bailee of an automobile is not imputable to the owner. Hence, in an action by the owner against a third person to recover for damages to the machine, caused by the contributory negligence of the bailee and such third person the negligence of the bailee is no defense."

In addition to the authorities cited in the U-Drive-It-Car Company Case there are many others; for instance, in Morgan County v. Payne, 207 Ala. 674, 93 So. 628, 30 A. L. R. 1243, we find: "The negligence of a mere bailee of a truck is not imputed to the owner in an action by the latter to hold a third person liable for negligent injuries to it, unless some direction of or control over the actions of the bailee was reserved by the bailor."

In Cain v. Wickens, a New Hampshire case, reported 81 N. H. 99, 122 A. 800, 30 A. L. R. 1246, is found the following: "The negligence of one to whom an automobile is lent by its owner, and who is not an employee of the owner, is not imputed to the owner so as to prevent his holding a stranger liable for injury to the machine to which such negligence contributed." See, also, Lax v. Railway Company, 142 Misc. 545, 255 N. Y. S. 63; Robinson v. Warren, 129 Me. 172, 151 A. 10; New Jersey Electric Company v. Railroad Company, 61 N. J. Law, 287, 41 A. 1116, 43 L. R. A. 849; Sea Insurance Company v. Railroad Company, 86 C. C. A. 544, 159 F. 676, 17 L. R. A. (N. S.) 925; Tobin v. Syfrit, 2 W. W. Harr. (Del.) 274, 122 A. 244; Campbell v. Railway Company, 211 Mo. App. 331, 245 S. W. 58, 59; Hunt-Berlin Coal Company v. McDonald Coal Company, 148 Tenn. 507, 256 S. W. 248, 250; Siegrist Bakery Company v. Smith, 162 Tenn. 253, 36 S.W. (2d) 80; Corsaro v. Ambrose, 153 A. 712, 9 N. J. Misc. 323. The Cadillac Motor Car Company is therefore entitled to recover from Sewell such loss as it has sustained.

■ However, the judgment in its favor should be reduced to the actual loss. The repairs to the La Salle were made in the repair department of the Cadillac Company, and it is admitted that to the actual cost of labor and material was added 20 per cent., which is the usual profit made for repairing damaged automobiles. The argument made in favor of this charge is that Sewell, who is responsible for the damage, should not be allowed to benefit by the fact that the claimant is in the automobile repair business. It is stated that the recovery in such cases is not properly based upon the cost of repairs, but entirely on the difference in value of the damaged article before and after the accident. This is, of course, the correct rule.

Berry, in his Encyclopedia of Automobile Law, vol. 17 and 18, § 253, states the rule thus: "Although the difference in value before and after the injury is the technical measure of damage for an injury to a motor vehicle, as a practical proposition the difference in many cases is represented by the cost of repairing the machine. The difference in value of the property before and after the injury is presumptively the amount it would cost for repairs. * * * It is the value, not the cost, of repairs, which is essential; if for some reason the repairs cost an excessive sum, the excess is borne by the owner. The reasonable cost is what an automobile repair man would, in accord-

ance with the market and usual rates, charge for the work and material necessary."

The same rule is set forth in Blashfield's Encylopedia of Automobile Law, vol. 2, p. 2004.

█ Had the Cadillac Company been compelled to employ some third person or corporation to make the repairs, that third person or corporation would have been entitled to a fair profit on the work, and Sewell would have been liable for that profit as well as for the other items of damage; or, had the Cadillac Company decided not to make the repairs at all, it could have sued for and recovered the full difference between the value of the damaged car and the value of the car prior to the accident. But the claim is not made for the difference in value, but for the amount actually paid out in making the repairs. It is based solely on the cost to the Cadillac Company, and the proof shows that the actual cost was less than the amount claimed. If that company is allowed to add to this bill a profit of 20 per cent., then it has unquestionably benefited to some extent by the transaction. If it chose to adopt the method of claiming the actual cost of repairs rather than the depreciation suffered by the automobile, then it is bound by its own action and can only recover the actual cost.

That in the 20 per cent. added there is an allowance for general overhead expenses of the repair shop would be of interest if, in the record, we could find evidence as to the exact amount which should be allowed on this item, but we find no such evidence, and therefore recovery must be limited to the total of the items shown to have been expended for actual labor and parts.

As we view the statement in the record, after the items representing labor and parts were totaled, there was added 20 per cent. of this amount, and, after this addition had been made, the total amount claimed was $417.07, which was the amount of the judgment. Deducting the amount added as profit leaves a balance of $347.55.

██ Plaintiff needs no reservation of its rights against the insurance carrier of Sewell. Under the statute referred to (Act No. 55 of 1930), its right is to proceed directly against either the principal or the insurer, or both, and to seek solidary judgments. So long as the claim is not paid by one, the right to sue the other exists. Under article 2095 of the Revised Civil Code, where two or more persons are solidarily obligated, "a suit brought against one of the debtors does not bar the creditor from bringing suits on the same account against the others." Furthermore, the prescription which might otherwise relieve the insurer is interrupted by the suit against the principal, for we find that in article 2097 of the Code it is provided that "a suit brought against one of the debtors in solido interrupts prescription with regard to all."

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by reducing the amount thereof in favor of Cadillac Motor Car Company and against William J. Sewell to the sum of $347.55, with legal interest from judicial demand, and it is further ordered that the judgment, as thus amended, be, and it is, affirmed. All costs to be paid by William J. Sewell.

Amended and affirmed.