CARRIE FORD AND JOSEPH T. FORD, PLAINTIFFS-RE-
SPONDENTS, v. BENJAMIN FOX, DEFENDANT-APPEL-
LANT, AND CHARLES DeYOUNG AND THOMAS FLAN-
NIGAN, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 8, 1950—Decided May 19, 1950.

Before Judges JACOBS, DONGES and BIGELOW.

*Mr. Sidney P. McCord, Jr.,* argued the cause for the appellant Benjamin Fox (*Messrs. Starr, Summerill & Davis,* attorneys).

*Mr. Frank M. Lario* argued the cause for the respondents.

The opinion of the court was delivered by

JACOBS, S. J. A. D. The plaintiffs recovered judgment in the Law Division in their negligence action against the defendants Fox, DeYoung and Flannigan. The defendants DeYoung and Flannigan have not appealed but the defendant Fox has appealed on the ground that judgment should have been directed in his favor.

The defendant Flannigan operated a Texaco gasoline service station in Clementon, New Jersey. In conjunction with his business he made minor automobile repairs and maintained a lot for the sale of used cars. His cousin, the defendant DeYoung, although not regularly in his employ helped him out "once in a while." The defendant Fox had purchased his DeSoto brougham through Flannigan and Flan-

nigan had done repair work for him in addition to selling him gasoline and oil.

On September 25, 1947, Fox drove his car to Flannigan's station and told him, in the presence of DeYoung, that he had to have it inspected. Flannigan advised him that a window would have to be installed before it would pass inspection and that since he could not put the window in himself "we would have to take it elsewhere to have it put in, then after the window was installed, we could have it inspected." Thereupon Fox instructed Flannigan to arrange for the installation of the window and the inspection of the car. Fox testified that he told Flannigan "to take care of what needed to be done and have it inspected." Flannigan testified that Fox gave no instructions as to the manner and place of the installation and inspection but left that to him, to be done at his "convenience" and that he told Fox that he did not know whether he "could take the car or whether Charles (DeYoung) would have to take it the next day."

On the following day, DeYoung took Fox's car from Flannigan's lot and drove it to Camden to have it repaired and inspected. He testified that he was unable to have the window installed because the "window regulator was bad" and did not then have the car inspected. He started his return trip to Clementon and on the way negligently injured the plaintiff Carrie Ford. Subsequently the window was installed and, after Flannigan made minor adjustments, the car was inspected. Flannigan paid for the installation of the glass but had not as yet billed Fox.

In their pretrial order the parties agreed that Fox "had given the automobile involved in the accident to Thomas Flannigan, for the purpose of making repairs and adjustments thereto and that at the time of the accident the automobile had not yet been returned to its owner." They "further agreed that the defendant, Charles DeYoung, had taken the automobile involved in the accident from the place of business of Thomas Flannigan," for the purpose of having it inspected. At the close of the testimony Fox moved for directed judg-

ment on the ground that there was no relationship of master and servant or principal and agent between DeYoung and himself. This motion was denied and the cause was submitted to the jury which returned a verdict against the defendants.

██ ██ Our courts have recognized that "control by the master over the servant is of the essence of that relationship." See *Younkers v. Ocean County,* 130 *N. J. L.* 607, 608 (*E. & A.* 1943). *Cf. Restatement, Agency* (1933), § 220. Ordinarily, where an automobile is delivered to a garage keeper for repairs, the owner does not exercise control over the garage keeper or his work and courts throughout the country have held him not to be liable in the event of injury caused by the negligent operation of his car by the garage keeper; the latter is generally said to be an independent contractor or bailee rather than an agent or servant of the owner. See 7-8 *Huddy, Automobile Law* (1931), § 130; 4 *Berry, Automobiles* (*7th Ed.* 1935), § 4.416; annotation in 18 *A. L. R.* 974 (1922). This view has been accepted by our courts. *Onufer v. Stroul,* 116 *N. J. L.* 274, 278 (*E. & A.* 1936); *Marx v. Cornish,* 11 *N. J. Misc.* 637 (*Sup. Ct.* 1933). It would appear to be applicable even though the type of service being performed for the owner was an incidental rather than a major part of the garage keeper's business. *Cf. Bell v. State of Maryland,* 153 *Md.* 333, 138 *A.* 2d 227 (1927); *Siegrest Baking Co. v. Smith,* 162 *Tenn.* 253, 36 *S. W.* 2d 80 (1931). See *Yearwood v. Peabody,* 45 *Ga. App.* 451, 164 *S. E.* 901 (1932).

██ In the instant matter the facts and reasonable inferences therefrom are, in all material respects, not in dispute; we consider that they compelled a direction of judgment in favor of Fox on the ground that the car was not being operated by his agent or servant at the time of the accident. See *Geary v. Simon Dairy Products Co.,* 7 *N. J. Super.* 88, 91 (*App. Div.* 1950). Fox was concerned with the end result, namely, having his car inspected; he was not concerned with the means employed but left those, including the requisite repairs,

to Flannigan. *Cf. El v. Newark Star Ledger,* 131 *N. J. L.* 373, 378 (*Sup. Ct.* 1944). His arrangements with Flannigan contemplated no retention of control by him from the time of his delivery of the car until its return to him inspected. He had no control over the driver DeYoung, or over his route or manner of driving. Flannigan's undertaking to have the window installed and the car inspected was incidental to his business and DeYoung, at the time of the accident, was driving the car on his behalf as his agent or servant. See *Reinhardt v. G. W. Tisdale, Inc.,* 4 *N. J. Misc.* 527, 529 (*Sup. Ct.* 1926). Although it may be said that DeYoung was operating the car with Fox's permission or acquiescence he was not his agent or servant within the cited authorities. While in some states statutes have been enacted imposing liability upon the owner for injuries resulting from the negligent operation of his car upon a showing, without more, that his car was being operated with his express or implied consent, the New Jersey Legislature has not taken similar action. See *Berry, supra,* § 4.409; *Zuckerman v. Paxton,* 260 *N. Y.* 446, 184 *N. E.* 49 (*Ct. of App.* 1933).

The judgment of the Law Division is reversed as to the defendant Fox.