**William L. MELSON, t/a Bill Melson Auto Sales, Defendant Below, Appellant,**

**v.**

**Nancy ALLMAN and Samuel Allman, her husband, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

June 27, 1968.

F. Alton Tybout, Wilmington, for appellant.

Harold Leshem, of Booker, Leshem, Green & Shaffer, Wilmington, for appellees.

WOLCOTT, Chief Justice, CAREY, Justice, and DUFFY, Chancellor, sitting.

CAREY, Justice:

In this appeal from a judgment of the Superior Court, William L. Melson, t/a Bill Melson Auto Sales, the appellant, seeks reversal of a judgment in favor of the appellees, Nancy Allman and Samuel Allman, her husband. The suit below was brought to recover damages for personal injuries suffered by Mrs. Allman as the result of an automobile accident which occurred on November 16, 1966, on the New Jersey Turnpike. The trial judge denied defendant's motion for a directed verdict and granted plaintiffs' motion for directed verdict as to liability. The jury assessed the wife's damages at $11,000.00, and awarded the husband $1,500.00.

Appellant's motion for directed verdict was based upon his contention that, although the car which caused Mrs. Allman's injuries was owned by him, it was being driven at the time by an independent contractor rather than by an employee. He argued that the facts showed such a relationship as a matter of law, or at least made the question a matter for the jury to determine. He advances this same argument here. The appellant also objected at the trial to the allowance for Mrs. Allman of any amount as loss of earnings; he now contends that the Court below was in error in overruling that objection.

The facts are extremely unusual. The appellant is a used-car dealer in Wilmington, Delaware. On the day of the accident, he drove to a place near Bordentown, New Jersey, accompanied by his brother-in-law. The purpose of the trip was to attend a used-car auction. During the sale, he purchased three cars. Two of these he sent back to Wilmington on a car-carrier, along with some others which had been purchased by another Wilmington dealer. His plan was to drive the third car home himself and to let his brother-in-law drive back the car in which they had ridden to the auction site. After the sale was over, the two men went to a nearby restaurant for dinner. When they had finished, appellant had a headache and did not feel like driving. They went to a gasoline station nearby, and there were ap-

proached by an unknown man who asked for a ride. This man had in his hand a Pennsylvania dealers license tag. He was seeking a ride to Philadelphia. Appellant told him that he could drive the used car to Wilmington for him, and thence go back to Philadelphia. He stated that he would pay the man $10.00, plus an allowance of $2.00 for tolls. The man agreed, whereupon appellant and his brother-in-law left for Wilmington, driving down the turnpike. Upon their arrival at Delaware Memorial Bridge, they stopped and waited for the unknown man. After waiting quite some time, they drove to appellant's car lot in Wilmington, where they again awaited the unknown driver. He did not appear.

The following day, appellant got in contact with the New Jersey State Police and learned that his car had run into the rear end of appellees' car at some place on the turnpike, causing injuries to Mrs. Allman. The unknown driver had simply disappeared, and has never yet been found. He had left appellant's car on the side of the highway.

Appellant gave considerable testimony about a "custom" apparently followed by many used-car dealers. According to him, auction sales of cars are attended by a number of individuals who bring with them dealers license tags. A dealer who makes purchases may arrange for a carrier to take away the cars he has bought; on the other hand, he may employ some of the drivers, who attach their own tags to the cars and drive them to the destination for a specified sum. Mr. Melson stated that he had done this on many prior occasions without having had any difficulty. He knew the names of a few of those people, but knew nothing else about them.

He testified that, on this one occasion, he believed the man he hired was one of the customary people who do this work, because he had a license tag in his possession; that he had never seen the man be-

fore or since, did not know his name or where he lived, and in fact knew nothing whatever about him except the fact that he had a dealer's tag in his possession. He did not give the man any directions as to what route to follow, how fast to drive, or anything else save the instruction to take the car to a specified address, which was appellant's car lot in Wilmington. He gave the man $2.00 for toll charges and promised to give him $10.00 more in Wilmington.

■ The parties agree that the law of New Jersey is applicable in determining whether the driver was an independent contractor or an employee of appellant. Friday v. Smoot, Del., 211 A.2d 594. In contrast to many states, New Jersey presumes that the operator of a motor vehicle, which is involved in an accident, is the agent of the owner, and is acting within the scope of his employment. Tischler v. Steinholtz, 99 N.J.L. 149, 122 A. 880; Onufer v. Strout, 116 N.J.L. 274, 183 A. 215; Conway v. Pickering, 111 N.J.L. 15, 166 A. 76. The presumption is, of course, rebuttable, but "to overcome this presumption the evidence must be clear, convincing, and uncontradicted." Conway v. Pickering, supra. If the evidence is conflicting, or is susceptible to contrary inferences, the matter is one for the jury. Onufer v. Strout, supra. Although a number of factors are considered in determining whether a given relationship is that of master and servant or that of independent contractor, it is often said that the right to control the mode of doing the work is the principal consideration. 56 C.J.S. Master and Servant § 3(3), 49. In Ford v. Fox, 8 N.J.Super. 80, 73 A.2d 270, the New Jersey Court stated: "Control by the master over the servant is the essence of that relationship." See 1 Restatement, Agency § 220. In this connection, the word "control" means the right to control, rather than the actual exercise of that right. Lester C. Newton Trucking Company v. Neal, Del., 204 A.2d 393; a master may not escape liability for acts of his servant

simply by failing to exercise his right of control over the servant.

Among other factors which are frequently taken into consideration in determining the nature of the relationship are such matters as whether or not the owner is concerned solely with the end result and not the means used to accomplish that result; the duration of the employment; the power to hire and fire; the mode of payment; and the nature of the work to be done. All of these considerations, however, are usually considered subordinate to the question of right of control. This is true in Delaware under the *Neal* decision, supra, and seems to be true also in New Jersey, according to Ford v. Fox, supra.

In the present case, the appellees have the benefit of the presumption that the driver was the agent of appellant. The latter's testimony as to the facts of the hiring are uncontradicted and, in our opinion, warrant only the one inference drawn by the trial Judge, i. e., that an employer-employee relationship existed. Although appellant testified that he did not care which route the driver followed in getting to Wilmington, he apparently expected him to come down the turnpike, because he gave him the money for tolls and waited for him at the end of the turnpike. But that is not especially important: the important factor is that he had the right to direct the driver. This result is not altered by the fact that the man was hired only for the one job, or that he was to be paid a flat sum, or that the appellant may not have thought he was creating a master-servant relationship at the time. Accepting as true all of the appellant's testimony, we are convinced that the trial Court was correct in directing the verdict in appellees' favor on the issue of liability.

The trial Judge instructed the jury, in effect, that it could include in its award for Mrs. Allman any loss of earnings proximately caused by the accident, if it found that her usual weekly income was a salary. We will assume that the jury made that finding and included in its award a sum for that item. This section of the charge was objected to by the defendant upon the theory that the weekly payments she received were not in fact salary for services, but were merely withdrawals of profits.

The facts are these: Mr. and Mrs Allman owned a corporation called Levi Goldenberg Corporation, which operates an Army and Navy store. They operate the business themselves and customarily have no other employees. For some years, she had received a weekly check for $73.00, and her husband received one for $25.00. Perhaps the explanation for the discrepancy in amounts is the fact that her husband draws social security benefits. During the 18 weeks of her incapacity, these payments continued, the store being operated by Mr. Allman with some part-time help. At places in their testimony, appellees referred to these payments as their "draw," but Mrs. Allman several times emphasized that the checks represented "our pay."

New Jersey, we understand, accepts the so-called "collateral source" rule. Long v. Landy, 35 N.J. 44, 171 A.2d 1. That doctrine is also followed in Delaware. Yarrington v. Thornburg, Del., 205 A.2d 1. The rule is "predicated upon the theory that a tort-feasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant." In the present case, we think a reasonable interpretation of the testimony is that the corporation was paying weekly salaries to these appellees, and we see no reason why the collateral source doctrine is inapplicable. If it were true, as appellant suggests, that the payments were simply divisions of the corporate profits, our ruling might be otherwise; we cannot say, however, that the testimony bars the conclusion which we assume the jury reached. We accordingly find no reversible error in this respect.

For the reasons stated, the judgment below will be affirmed.