## FISHER v. BONNEVILLE HOTEL CO.

No. 3417.   Decided March 17, 1920.   (188 Pac. 856.)

1. EXCEPTIONS, BILL OF—DOCUMENTS SHOULD NOT BE ATTACHED TO BILL AFTER PREPARATION.  Documents purporting to extend the time to prepare and serve a bill of exceptions should not be attached to the bill after it has been prepared and presented for settlement.  (Page 590.)

2. EXCEPTIONS, BILL OF—TIME FOR FILING WHERE NO NOTICE OF ENTRY OF JUDGMENT GIVEN STATED.  Where no notice in writing of the entry of judgment was served on defendant, defendant would have the whole of the six months period allowed for appeal, and perhaps longer under certain conditions, in which to prepare the bill of exceptions and procure settlement thereof, in view of Comp. Laws 1917, section 6969.[1]  (Page 591.)

3. APPEAL AND ERROR—BILL OF EXCEPTIONS MUST SHOW SERVICE OF ENTRY OF JUDGMENT.  Where the bill of exceptions did not show service of notice of entry of judgment, the bill, which was prepared and presented for settlement within the six months period, will be deemed to have been presented in time, notwithstanding a document purporting. to be a notice of entry of judgment, served on defendant appellant, appeared in the transcript sent up by the clerk of the district court, for as the bill of exceptions showed no service, Comp. Laws, 1917, section 6969, requiring the bill of exceptions to be prepared and served within thirty days after services of notice of judgment, has no application. (Page 591.)

4. INNKEEPERS—LIABILITY OF INNKEEPER AND BOARDING HOUSE KEEPER CONTRASTED.  An innkeeper is an insurer of property committed to his care by a guest and is responsible for its loss, unless loss is caused by the act of God, the public enemy, or negligence of the guest himself; but, where the relation between the parties is that of boarder and boarding house keeper, the boarding house keeper is liable only for loss for failure to exercise ordinary care.[2]  (Page 593.)

5. INNKEEPERS—WHO ARE "GUESTS" AT INN.  Any one away from home receiving accommodations at an inn as a traveler is a "guest," entitled to hold the innkeeper responsible as such; hence the wife of a legislator, who had come to the capital city of the state during the session, is a guest in a hotel in which she and her husband were residing during his stay as a legis-

---

[1] *Wilson* v. *Salt Lake City*, 52 Utah, 506, 174 Pac. 851.

[2] *Lawrence et al.* v. *Howard*, 1 Utah, 142.

lator, even though the room was rented by the month (citing Words and Phrases, Guest). (Page 595.)

6. INNKEEPERS—WIFE OF GUEST DEEMED GUEST, THOUGH SHE DID NOT REGISTER OR PAY FOR LODGING. Though the wife of a guest at a hotel, who rented a room by the month during his temporary stay in the city, did not register and paid no consideration, she is nevertheless a guest in the hotel, and entitled to protection as such, and the hotel is liable for loss of her baggage delivered to the hotel porter. (Page 595.)

Appeal from District Court, Salt Lake County, Third District; *P. C. Evans*, Judge.

Action by Annie M. Fisher against the Bonneville Hotel Company.

From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*Gustin, Gillette & Brayton*, of Salt Lake City, for appellant.

*H. L. Mulliner*, of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff alleges in her complaint the corporate existence of defendant and that it was the keeper of an inn or hotel in Salt Lake City known as the "Newhouse Hotel"; that on the 20th day of January, 1917, after plaintiff had been received by defendant as a guest in said hotel, plaintiff delivered to and left in the custody of said defendant her baggage, consisting of a leather grip, containing wearing apparel, toilet articles, and other personal property, all of the reasonable value of $204.75; that after defendant had taken possession of said baggage and property, and assumed the relation of hotel keeper thereto, said defendant negligently failed to care for the same, so that it became wholly lost to the plaintiff, to her damage in the sum heretofore mentioned.

Defendant, answering, admits that at the time mentioned in the complaint it was a corporation, and keeper of the inn or hotel described in the complaint. It denies both specifically and generally all the remaining allegations thereof.

The cause was tried to the court without a jury, findings were rendered in favor of the plaintiff, judgment was entered thereon, from which judgment defendant appeals, and assigns numerous errors in the findings of the court.

Before considering the alleged errors of the court, it becomes our duty to dispose of a motion made by respondent to strike the bill of exceptions. The motion is voluminous, and calls attention to numerous apparent irregularities in the document filed as a bill of exceptions. Various documents purporting to be orders extending time to prepare and serve the bill are challenged by respondent and their authenticity disputed. All of the alleged orders covered by the motion appear to have been procured and attached to the bill after it had been prepared and served, and even after it had been returned to appellant and presented to the court for settlement. This, of course, is an irregularity, and it is difficult to understand just how it could have occurred. The explanation made by appellant's counsel, however, tends to show good faith on their part in attaching the documents to the bill, so that no intentional wrong may be imputed to them in respect to the matter which constitutes the basis of the motion to strike.

As we view the question, the documents objected to are wholly immaterial, and ned not have been attached to the bill at all. The record shows that judgment was entered and filed May 15, 1919. Defendant's time within which to appeal would not expire until November 15th of the same year, and if no notice in writing of the entry of judgment was served upon the defendant at all, it would have the whole six months, and perhaps longer under certain conditions, in which to prepare and serve its bill of exceptions and procure a settlement thereof. See *Wilson* v. *Salt Lake City*, 52 Utah 506, 174 Pac. at page 851. Of course defendant was required to file and serve its notice of appeal within six months from the entry

of the judgment, whether notice of the entry was served or not; there being in this case no stay of judgment by motion for a new trial or other proceeding. The record shows that notice of appeal was filed and served on the 11th day of November, 1919, and was therefore in time. It further shows that the bill of exceptions was settled on the same day by the judge who tried the case, which was also in time if no notice in writing of the entry of judgment was served upon appellant.

Comp. Laws Utah, 1917, section 6969, among other things, provides that a bill of exceptions may be prepared and served within thirty days after notice of the entry of judgment when the case is tried without a jury.

The controlling question in this proceeding is, was there notice of the entry of judgment served upon appellant at any time? If so it should appear in the bill of exceptions. It could not appear in the judgment roll. There is no notice of entry in the bill of exceptions. A document purporting to be a notice of entry of judgment served upon appellant appears in the transcript sent up by the clerk of the district court, but we have no power to give it effect in determining the question. It is pertinent to remark that if this document, which on its face indicates that it was served on appellant the next day after the judgment was entered, had been incorporated in the bill of exceptions, respondent's motion to strike would of necessity prevail, because the purported orders to extend the time in which to prepare and serve the bill were wholly insufficient. Our conclusion, therefore, is that the orders objected to were immaterial, and appellant's proposed bill of exceptions was served in time. The motion to strike the bill is denied.

The principal and controlling question presented by appellant in its assignment of errors is the relationship existing between the plaintiff and defendant at the time of the transaction complained of. Plaintiff contends she was a guest of the hotel, while defendant insists she was not. This involves a consideration of all the evidence bearing upon that question.

There is substantial evidence in the record to show that early in January, 1917, plaintiff's husband, a member of the

Utah Legislature of that year, came from his home in Heber City, Wasatch county, Utah, and went to defendant's hotel, known as the Newhouse Hotel, in Salt Lake City, and there made arrangements for a room for himself and plaintiff: that the price arranged for was so much per month during the time that they might remain; that plaintiff came two or three days after her husband made the arrangements, and from thence on they occupied the room. It does not appear that plaintiff registered, or that her name appears on the register of the hotel; but she was there occupying the room with her husband. One or two of their children came down from Heber and occupied the room with their parents a portion of the time while they were there. It also appears that on or about the 20th of January, 1917, and during their occupancy of the room, plaintiff and her husband made a trip of one day to Provo, Utah; that as plaintiff was leaving her room, carrying her grip or suitcase in her hand, one of the porters of the hotel offered his services in carrying the grip; that plaintiff stated she could carry the grip herself, but the porter insisted on carrying it and took the grip; that the porter did not get on the elevator with the plaintiff in going down to the lobby; that plaintiff's husband told the bell boy to tell the porter when he came to put the grip with the other grips, and showed the bell boy where they were; that plaintiff and her husband then went out to breakfast, after which plaintiff waited on the corner while her husband and another gentleman went for the grips; that when they returned, and while on the street car, plaintiff called her husband's attention to the fact that he had left her grip; that they went on to the railroad depot, and there her husband telephoned to the hotel and was answered by one of the porters; that he informed the porter that he had left plaintiff's grip, and after some inquiry or investigation by the porter he informed plaintiff's husband that the grip was there, and promised to take care of it until plaintiff and her husband returned from Provo; that they did return that evening, but upon investigation were unable to find the grip; that considerable investigation was made by the manager of the hotel, the porters were examined, and the man-

ager informed the porters that they had been careless, and promised plaintiff's husband that the matter would be fixed up if the grip could not be found. The grip contained ladies' and children's wearing apparel, toilet articles, etc., found by the court to be of the value of $171.75. There is more or less conflict in the evidence, but it would be useless to review the same, for, as stated in the beginning, there is substantial evidence to the effect above stated.

It is contended by appellant that plaintiff was not, in law, a guest of the hotel; that, if she occupied any relation at all to the hotel, it was as a boarder, and not as a guest. As to the responsibility of a hotel keper for the 4 loss of property of one patronizing the hotel, much depends upon the question whether the patron is a boarder or a guest. If a guest, the hotel keeper becomes an insurer of the property committed to his care, and is responsible for its loss, unless the loss is caused by the act of God, the public enemy or the negligence of the owner himself. If the patron is a boarder, the hotel keeper is not responsible except in case of his failure to use ordinary care. *Lawrence et al.* v. *Howard,* 1 Utah, 142, and cases hereafter cited.

In the case at bar the court found that the property was lost through the negligence and carelessness of the defendant company. So that, even if plaintiff was only a boarder in the sense that that term is used in the law, still the hotel company owed her the duty of using ordinary care in respect to the property left in its charge. The evidence, as we have shown, discloses the fact that plaintiff handed the grip to one of the porters of the hotel, at his request, and upon his offer of assistance, when she was leaving her room. That is the last she ever saw of the grip, and when the whole story was laid before the hotel manager he charged the porters, in the presence of each other, with being careless in respect to the property. Certainly this court, in view of such evidence, cannot find that the evidence was insufficient to support the finding.

Defendant makes the positive admission in its assignment No. 6 that the evidence shows that plaintiff was a boarder of the defendant company. With this admission there is perhaps

no real necessity for prolonging the discussion, for we have already held that the evidence is sufficient to sustain the judgment, even if plaintiff was only a boarder. But defendant brings forth another arrow from its quiver, and in its assignment No. 2 alleges the insufficiency of the evidence to show there was ever any relation of innkeeper or hotel keeper between plaintiff and defendant. Thus, in assignment No. 6, appellant insists that under the evidence plaintiff was a boarder, and not a guest, and in assignment No. 2, with equal assurance, insists that plaintiff was not even a boarder. In view of the celerity with which appellant changes from one position to another, it is difficult for the court to treat the question in a straightforward, logical manner. We have already shown that, even if plaintiff was only a boarder, as admitted by appellant in its assignment No. 6, still the duty devolved upon defendant to exercise ordinary care in respect to her property placed in its custody.

But, if plaintiff was not even a boarder of defendant, the question is: What was her status during the time she was in the hotel? It will be remembered plaintiff's husband went to the hotel early in January, 1917, and engaged a room for himself and plaintiff. The rate was fixed at twenty dollars per month during their stay, which was indefinite. The rate was the same as members of the Legislature were paying at other hotels. The plaintiff's name was not entered upon the hotel register, but the evidence shows that the arrangement for the room was for her, as well as for her husband. They took their meals sometimes at the hotel café and sometimes at other places. The rate for the rooms did not include meals. The hotel was run on the European plan.

"Any one away from home, receiving accommodations at an inn as a traveler, is a guest, and entitled to hold the innkeeper responsible as such."

"While a guest is a traveler, it is not necessary that he should come from another state or county, or from any distant place. Any person going from his own home, whatever the distance may be, and applying for and receiving accommodations at a hotel, is a traveler, and therefore a guest."

"If a person goes to an inn as a wayfarer and a traveler, and the innkeeper receives him as such, he becomes the innkeeper's guest,

and the relation of landord and guest is instantly established between them. Neither the length of time that a man remains at an inn, nor any agreement he may make as to the price of board per day, deprives him of his character as a traveler and a guest, provided he retains his status of traveler in other respects."

These excerpts are taken from 4 Words and Phrases, at page 3190. We believe they correctly reflect the law as to what constitutes a guest of an inn or hotel. Respondent calls our attention to other cases and authorities, generally to the same effect. Schouler on Bailments, section 231; *Pinkerton* v. *Woodward*, 33 Cal. 557, 91 Am. Dec. 657; Beale on Innkeepers, sections 111, 113; *Hill* v. *Memphis Hotel Co.*, 124 Tenn. 376, 136 S. W. 997, 34 L. R. A. (N. S.) 420; *Watt* v. *Kilbury*, 53 Wash. 446, 102 Pac. 403; *Pettit* v. *Thomas*, 103 Ark. 593, 148 S. W. 501, 42 L. R. A. (N. S.) 122, Ann. Cas. 1914B, 726; *Moon* v. *Yarian*, 147 Ill. App. 383. See, also, Wandell on Inns and Boarding Houses, at page 57.

In the light of the authorities referred to, there can be no doubt that plaintiff's husband at least was a guest of defendant's hotel. But it is contended by appellant that, as plaintiff did not register or have any conversation with any of the employés with reference to becoming a guest, or pay any extra compensation for the room, therefore the relation of innkeeper and guest was not established. In the first place, it is in evidence that the arrangement for compensation was for both plaintiff and her husband. Beale on Innkeepers, at section 113, states the rule as follows:

"It is not necessary even that the guest should be personally obliged to pay. If, for instance, a man goes with his family to an inn, each member of the family is a guest, though the head of the family alone is responsible for payment of the innkeeper's charges. And in general every one who is received and entertained as a guest at an inn is a guest, though his bill is paid by another."

This, also must be the law. Under the circumstances detailed in the evidence, if her husband was a guest, his wife, the plaintiff in this action, was also a guest. To hold otherwise would simply be an abortive attempt on our part to convert the law into a patent absurdity and make it appear ridiculous.

Assuming, then, that under the facts established plaintiff was a guest of the defendant, what was the defendant's liability? Beale on Innkeepers, at section 185, states that in most jurisdictions the liability is analogous to that of common carriers. He then says:

"The rule as commonly stated in these jurisdictions is that the innkeeper is liable for the goods of the guest lost in the inn, unless the loss is the act of God or of a public enemy, or by fault of the owner."

In other words, the innkeeper becomes an insurer of the property against loss. The same author, at section 182, last paragraph, says:

"The innkeeper's responsibility does not depend in any degree upon delivery to him of the goods for which he is held liable. In the earliest case for which he was held answerable for the goods stolen he attempted to avoid liability by pleading that the guest had not delivered the goods to him, but had put them in the chamber; but judgment was given for the guest upon this plea."

Such is the rule at common law. It has not been modified by any statute in this jurisdiction. To the same effect is the note in 8 L. R. A. at page 97, and cases cited; Wandell on Inns, page 91.

On the question of an innkeeper's liability, respondent also cites the following authorities: *Keith* v. *Atkinson,* a Colorado case, 48 Colo. 480, 111 Pac. 55, 139 Am. St. Rep. 284; 22 Cyc. 1081; *Kaplan* v. *Titus,* 140 App. Div. 416, 125 N. Y. Supp. 397.

The cases cited by appellant are offered in support of its proposition that plaintiff was a boarder, and not a guest. They are easily distinguishable from the case at bar. It is not necessary to review them, either for the purpose of criticism or comment. The cases relied on are as follows: *Hill* v. *Memphis Hotel Co.,* 124 Tenn. 376, 136 S. W. 997, 34 L. R. A. (N. S.) 420; *Vance* v. *Throckmorton,* 68 Ky. (5 Bush) 41, 96 Am. Dec. 327; *Johnson* v. *Reynolds,* 3 Kan. 255; *Meacham* v. *Galloway,* 102 Tenn. 415, 52 S. W. 859, 46 L. R. A. 319, 73 Am. St. Rep. 886; *Haff* v. *Adams,* 6 Ariz. 395, 59 Pac. 111; 22 Cyc. 117.

The court is of the opinion that plaintiff was a guest of de-

fendant's hotel at the time her grip was lost, and that defendant is liable for the loss. We are also of the opinion that the finding as to the amount of damages is sustained by the evidence.

The judgment of the trial court is affirmed, at appellant's cost.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.