ANDREW JACKSON HOTEL, INC., v. PLATT.

Middle Section.    March 7, 1935.

Petition for Certiorari denied by Supreme Court, January 11, 1936.

Walker & Hooker, of Nashville, for plaintiff in error.

W. P. Cooper, of Nashville, for R. R. Ogilvie.

Joseph Higgins and J. E. Travis, both of Nashville, for defendant in error.

DeWITT, J. This action was brought for damages to a Hudson sedan automobile, the property of Dr. L. W. Platt, of Elkhart, Indiana, and resulted in a judgment for Dr. Platt, individually, and for the use and benefit of the Employers Fire Insurance Company, for $768 and costs, against the Andrew Jackson Hotel, Inc., an innkeeper in Nashville. The judgment was based upon a verdict of a jury directed by the trial judge upon motion made at the close of all the evidence. The action was brought against Andrew Jackson Hotel, Inc., R. R. Ogilvie, doing business under the trade-name of the First National Garage, Collett Mayfield, and H. B. Stone, doing business under the firm name of Stone Auto Repair Company. During the trial nonsuits were taken as to H. B. Stone and Collett Mayfield. At the close of all the evidence, the trial judge overruled a motion for peremptory instructions in favor of Andrew Jackson Hotel, Inc., sustaining, as aforesaid, a motion of the plaintiff for a directed verdict in his favor against the Andrew Jackson Hotel, Inc. The trial judge also overruled a motion for peremptory instructions in favor of R. R. Ogilvie, submitting to the jury the issue as to his liability, and the jury found in his favor and the cause was dismissed as to him. Motions for new trial were made by Andrew Jackson Hotel, Inc., and by the plaintiff as to R. R. Ogilvie, and were overruled. From the judgment against it the Andrew Jackson Hotel, Inc., has appealed in error. From the judgment dismissing the cause as to R. R. Ogilvie, Dr. L. W. Platt, the plaintiff below, individually and for the use and benefit of the Employers Fire Insurance Company, has appealed in error.

Dr. L. W. Platt held a policy issued by the Employers Fire Insurance Company, insuring him against any damage to his automobile from a collision. Under this policy the insured was to stand the first $50 of loss from such damage, and the insurer was to pay any amount above this sum within the limits of the sum provided in the policy. The policy contained a subrogation clause under which the insured assigned and transferred to the insurer all rights which he might have against any person or persons arising out of, or in any way connected with, damage from collision, and authorized the insurer to take any action which might be necessary in its own name or in that of the insured.

On the night of March 16, 1930, the Hudson sedan was damaged by a collision with a car driven by Collett Mayfield at the intersection of Broadway and Third avenue in Nashville, while the sedan was

being driven by one Allen, an employee of R. R. Ogilvie, who kept a storage garage on Third Avenue North, doing business under the name of First National Garage. The cost of repairs made to restore the Hudson sedan to its proper condition was $768, and the Employers Fire Insurance Company under its policy, paid to the repairer $718 and Dr. Platt paid the other $50. Dr. Platt therefore sued in this action to recover the sum of $768, of which $50 is for his individual use and $718 for the use and benefit of the Employers Fire Insurance Company.

On the evening of March 16, 1930, Dr. and Mrs. Platt arrived in Nashville from Florida in their Hudson sedan, on their way to their home in Indiana. Intending to spend the night in Nashville, they stopped their car in front of the Andrew Jackson Hotel, which was maintained by a corporation styled Andrew Jackson Hotel, Inc. Dr. Platt engaged lodging for them at that hotel. After doing so, he arranged with the doorman, who was an employee of the hotel company, to have his car sent to a garage. The doorman assured him that the garage keeper was perfectly responsible. During the conversation, Dr. Platt said to the man that he had a rattle in the front end of the car and he instructed him that, when he sent the car to the garage, he have the garage man look at it and telephone him what the trouble was and what would be the expense to fix it. Thereupon the doorman gave to Dr. Platt a numbered claim check of ''First National Garage, R. R. Ogilvie & Son, owners, 224 Third Avenue North, Nashville, Tennessee.'' The car was turned over to the doorman and was sent or taken by him to the First National Garage. It appears without dispute that the Andrew Jackson Hotel, Inc., received a commission from Ogilvie on all fees received by him for storage of cars sent by it to him; but it did not send such cars of guests to him exclusively. Payments of these fees were made monthly. About an hour afterward Dr. Platt was called by telephone by a person who said that he was at the First National Garage and told that the doorman had spoken to him about the rattle in the front end of the car, that they had looked it over and found that there was a couple of screws or bolts lost from the snubber, that they would have to be replaced, and that it would cost not exceeding $1.50. Dr. Platt thereupon told him to go ahead and fix it, and the man said that they would do so. Dr. Platt was not informed that it would be necessary to take the car out of the garage to any other place for this purpose. However, the manager of the First National Garage sent his employee Allen in the car to the shop of the Stone Auto Repair Company on Fourth Avenue, south of Broadway, for the purpose of having the repairs made. When this was completed, Allen started to drive the car back to the First National Garage, accompanied by Kenneth Hunt, an employee of the Stone Auto Repair Company. It was driven around to Third

Avenue South, then northwardly along that street toward Broadway. At the intersection of that street and Broadway was an overhead signal light. A street car was standing on Broadway, facing west with the red light toward it, and it was waiting for the light to turn so that it could go on westward. Allen drove the automobile right on across Broadway in front of the street car, and just about in front of that car the automobile came into collision with a Ford car, owned and driven by Collett Mayfield, going westward on the north side of Broadway. The collision damaged both cars very badly. Out of this accident and the antecedent circumstances this lawsuit arose.

The trial judge was of the opinion that the undisputed evidence warranted the sole conclusion that at the time of the accident the Hudson sedan was in charge of the Andrew Jackson Hotel, Inc., as an innkeeper, and therefore it was liable in damages to the plaintiff. In behalf of the Andrew Jackson Hotel, Inc., it is insisted that there is no evidence to justify the verdict and that it was error to overrule the motion for a directed verdict in its favor and to sustain the motion of the plaintiff for a directed verdict in his favor.

We have not found any decision involving facts quite analogous to these. The rule of the common law, in force in this state, is that an innkeeper is practically an insurer as to the goods of a guest, and is excused from liability only when the injury results from the act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself. Dickerson v. Rogers, 4 Humph., 179, 40 Am. Dec., 642; Manning v. Wells, 9 Humph., 746, 51 Am. Dec., 688; Rains v. Maxwell House Co., 112 Tenn., 219, 79 S. W., 114, 64 L. R. A., 470, 2 Ann. Cas., 488; Maxwell Operating Co. v. Harper, 138 Tenn., 640, 200 S. W., 515, L. R. A., 1918C, 672. The rule is of ancient origin, having been laid down by Lord Coke in Calye's Case, 8 Coke, 32a, 77 Reprint, 520. It is more strict than the rule generally applied to bailees. The criterion of the liability is the right of the innkeeper to charge the guest for his entertainment. Miller v. Peeples, 60 Miss., 819, 45 Am. Rep., 423. This rule extends to all personal property brought by the guest to the inn and placed under the care of the innkeeper; subject, however, as to certain property, to the provisions of Code, sections 6680, 6681, which are not applicable to this case.

In Dickerson v. Rogers, 4 Humph., 179, 40 Am. Dec., 642, the keeper of a public inn maintained a stable for the horses of guests. A horse of a guest was fatally injured from a defect in the stable. The innkeeper was held liable for the value of the horse because safe stabling had not been provided; the innkeeper being obligated to take all possible care of the goods of the guest.

Although the Andrew Jackson Hotel, Inc., did not own or maintain the First National Garage, we think that Ogilvie, its pro-

prietor, was the agent of the hotel company in furnishing a place for storage and care of the cars of its guests. We cannot sustain the proposition that the hotel company was the agent of Ogilvie. The hotel company received a financial benefit, though small, from placing Dr. Platt's car in the First National Garage.

The question then is, Did the hotel company through its agent bring about the injury to the automobile by violating its obligation to the owner? Or was the car injured during the performance of a separate and independent contract made by the owner with the garage keeper, and with which the hotel company was in nowise connected by any contract or obligation? When Dr. Platt agreed that his car be sent to the garage, he had no reason to believe that the hotel company owned or maintained the garage. On the other hand, he had direct notice that it did not. His inquiry as to the responsibility of the garage keeper showed his understanding that it did not. The claim check contained no reference to the hotel, but was a receipt by Ogilvie as owner of the garage. Dr. Platt had no reason to think that it was business of the hotel company to have automobiles repaired.

The doorman of the hotel merely conveyed to the garage keeper the request of Dr. Platt that he examine the car, ascertain the cost of repairs, and then report directly to Dr. Platt. In this the doorman acted solely as the agent of the owner and not of the hotel company. When the garage keeper reported the defect and the cost of repair to Dr. Platt, he thereupon made a contract of agency or employment directly with him, and with which the hotel company had nothing to do. When, under this agreement, the car was taken out of the garage for repairs, the obligation of the hotel company ceased until its return, although Dr. Platt did not know that it might be taken out of the garage. The act of taking it out was consequent alone upon the agreement which Dr. Platt made with the garage keeper. During that time the car was not infra hospitium—neither in the custody nor under the control of the hotel company.

In Calye's Case, supra, it was held that, if a man comes to a common inn, and delivers his horse to the hostler, and requires him to be put to pasture, which is done accordingly, and the horse is stolen, the innkeeper shall not answer for it; but, if the owner doth not require it, but the innholder, of his own head, puts the guest's horse to grass, he shall answer for him if he be stolen—so that the innholder, by law, shall answer for nothing that is out of his inn, but only for those things which are infra hospitium. The innkeeper is responsible for the goods of a guest placed outside the inn on the direction of the innkeeper without the knowledge or consent of the guest; but not where they are placed or left outside the inn at the request, or by the act, of the guest. 32 C. J., 557, and cases cited. There is no evidence that the hotel company, or any

one at the time acting as its agent or servant, failed to exercise the care required of it.

■ For these reasons this court holds that it was error to direct a verdict against the Andrew Jackson Hotel, Inc., and to refuse to direct a verdict in its favor. The assignments presenting these questions are sustained, the verdict against the Andrew Jackson Hotel, Inc., is set aside, and the action is dismissed as to it.

■ The verdict of the jury for Ogilvie has settled the question of his liability; for there is evidence that, if his employee was negligent, his negligence was not the proximate cause of the injury. This evidence is that the signal light was in his favor when he undertook to drive the car across Broadway. The jury could infer that, although he was exceeding the limit of speed prescribed by the ordinance of the city of Nashville, there would have been no collision had not the driver of the other car undertaken to go forward on the intersection when the light forbade; in other words, that the proximate cause of the collision was his negligence instead of that of the servant of Ogilvie.

■ The responsibility of Ogilvie was that of a bailee, who is liable only for negligence. If the property is injured in his hands without his fault, then the loss is on the owner. A garage keeper is merely a bailee for hire and is bound to use reasonable care only. He is not an insurer of the safety of an automobile placed in his care. Claypool v. Patrick, 6 Tenn. Civ. App., 457; Malone v. Harth, 12 Tenn. App., 687; Vaughn v. Millington Motor Co., 160 Tenn., 197, 22 S. W. (2d), 226; Siegrist Bakery Co. v. Smith, 162 Tenn., 253, 254, 36 S. W. (2d), 80.

It results that the judgment as to R. R. Ogilvie is affirmed.

The costs of the cause including the costs of the appeal, will be adjudged against the Employers Fire Insurance Company. Code, section 9094. The costs incident to its appeal will also be adjudged against the surety on its appeal bond.

Faw, P. J., and Crownover, J., concur.