# MERCHANTS FIRE ASSUR. CORPORATION OF NEW YORK v. ZION'S SECURITIES CORPORATION.

No. 6864.   Decided November 21, 1945.   (163 P. 2d 319.)

See 43 C. J. S., Innkeepers, sec. 13; 28 Am. Jur., 585.

*Judd, Ray, Quinney & Nebeker,* of Salt Lake City, for appellant.

*Gustin & Richards,* of Salt Lake City, for respondent.

WADE, Justice.

Appeal by Zion's Securities Corporation, defendant and appellant herein, from a judgment in favor of the Merchants Fire Assurance Corporation of New York, plaintiff and respondent herein.

Respondent had insured and paid for the loss of an automobile belonging to the estate of R. S. Armes and had brought this suit against the appellant herein, as the owner of the Temple Square Hotel, to recover the amount it had been compelled to pay the estate under the provisions of the policy it had issued its insured.

The facts as developed by the evidence on the trial of the case disclosed that Mrs. R. S. Armes, administratrix of the estate of R. S. Armes, respondent's insured, had with a party of three other women driven the insured car from Filer, Idaho, to Salt Lake City, Utah. At about 1:15 a. m. on September 2, 1944, the party arrived at the Temple Square Hotel and parked the car in the loading platform in front of the hotel on South Temple Street, whereupon Miss Owen, one of the women in the party entered the hotel to inquire if reservations for which the party had wired had been made. Upon being given an affirmative reply, she registered the entire party and asked if the hotel had a garage in which the car could be stored, or would they have to take it elsewhere. She was told by the room clerk that the hotel had facilities for storing the car and that it would be taken care of and the claim check placed in the key box. (This was contradicted by the room clerk, but the

court as trier of the facts found this to be true.) The room clerk then called a bellboy to go to the car and assist the party to bring their bags into the rooms assigned them. After the bags were brought in the bellboy inquired of Mrs. Armes if she had the keys to the car with her. She replied she had left them in the car. The next morning the ladies went sightseeing and shopping and did not return to the hotel until about 4 p. m. at which time the room clerk was asked for the claim check for the car. The clerk looked in their box for it but upon not finding it there said:

"There has been one lying around here all morning. It has probably been thrown away by now."

She also informed them that when they were ready for it, the hotel would call the garage for the car.

Upon returning to her room, Mrs. Armes was informed by the police that her car had been wrecked. It subsequently developed that the bellboy had taken and wrecked the car.

Respondent, as insurer, paid the administratrix the value of the car, upon doing which, under the provisions of the policy, it became subrogated to the rights of the insured to all claims against third persons for loss or damage to the automobile.

Appellants claim that the court erred in granting respondent a judgment because no bailment of the car had been proven. It contends that because the keys to the car were not given to the room clerk, that it never obtained exclusive possession of the car, but instead the car was parked on a public street and the keys negligently left in it so that anyone could take possession of it. We find no merit to this contention. The car was not stolen by anyone not connected with the hotel. It was taken by the bellboy, one of its employees. The car was parked in a place designated as a "loading platform" in front of the hotel.

In *Fisher* v. *Bonneville Hotel Co.*, 55 Utah 588, 188 P. 856, 12 A. L. R. 255, this court held that an innkeeper is

liable as an insurer for the property committed to his care, unless the loss is occasioned by the act of God, by the public enemy or the owner's own negligence. Sec. 39-0-1, U. C. A. 1943, limits this liability with reference to certain types of personal property, but is not applicable to the facts of this case.

The question which confronts this court is whether the hotel by its acts and representation took the automobile into its care and under its charge so that it could be considered 'infra hospitium."

The goods of a guest to be "infra hospitium" and render the innkeeper liable for its loss need not always be within the walls of the inn. See *Maloney* v. *Bacon,* 33 Mo. App. 501. It is sufficient if the goods are placed where the hotel by its acts has directed the goods to be placed. The court found that the automobile was parked in the "loading platform" in front of the hotel and that the clerk had instructed the guest to leave it there and the hotel would take care of it. This, in our opinion, was tantamount to the innkeeper placing the car there. Beale on Innkeepers and Hotels, Sec. 154, states the rule thus:

> "If the innkeeper, himself, without the direction of the guest, puts property of the guest which has been given to him, in a place outside the inn, or even entirely separate from it, the innkeeper is liable for it. * * *"

Although appellant argues that the car was never in the charge of the hotel because the keys were not delivered to the room clerk by the guest, we are of the opinion that under the facts and circumstances disclosed by the evidence in this case that the trier of the facts could reasonably find, as it did, that the car was placed in the care of and under the charge of the hotel. When, after arrangements had been made to have the car taken care of by the hotel, the bellboy asked where the keys were and was told they were in the car, the only reasonable inference to be drawn from those facts is that Mrs. Armes informed the bellboy that the keys were in the car so that he could

get them and bring them to the proper person and thus facilitate the car being taken care of by the hotel in accordance with the understanding previously had with it. It would not be reasonable to infer that Mrs. Armes answered the bellboy's question to satisfy his idle curiosity. That the bellboy is the proper person to run errands for guests is apparent from the testimony of the hotel's manager. According to his testimony the bellboys take care of room service, run errands within the building, assist the room clerks when they are busy, and carry bags in and out for guests. If they are authorized to carry bags in for guests, it is reasonable to assume they are authorized to carry in any article which the guest requests him to bring in. The effect of Mrs. Armes, under the circumstances here, telling the belloby where the keys were, was the same as it would have been had she handed the keys to the clerk or the employee of the hotel who was authorized to take care of the car. The situation here is analogous to that which arises when a guest gives a claim check for baggage to an employee of the hotel apparently authorized to accept such check. It has been held in such cases that upon delivery by the guest of the claim check for baggage to the employee of the hotel, that the baggage was "infra hospitium" and the innkeeper liable for its loss, even though the baggage was never brought within the walls of the inn. See *Maloney* v. *Bacon,* supra; *Williams* v. *Moore,* 69 Ill. App. 618; *Keith* v. *Atkinson,* 48 Colo. 480, 111 P. 55, 139 Am. St. Rep. 284. We therefore hold that when the keys to the car came into the possession of the bellboy, the car was in the care and under the charge of the hotel, and it became liable for its loss or damage while it was thus in its custody.

Since the car was "infra hospitium" no bailment need have been proved. In so holding, we do not wish to infer that under the facts of this case no bailment was proved. That question need not be decided here.

Affirmed. Costs to respondents.

LARSON, C. J., and TURNER and McDONOUGH, JJ., concur.

WOLFE, Justice.

I concur. The reply of the desk clerk to Miss Owen as found by the trial court must be construed as meaning that "they had facilities to take care of the car *and when the car was turned over to the hotel* it would be taken care of and that the check for the same would be put in the box," (italicized portion added by me) the added italicized portion being the necessary condition to make the hotel liable for its care. This reply is reasonably susceptible of the interpretation that the hotel while it did not own or even control a garage had control of facilities, but even if it is interpreted most strongly in favor of the appellant, viz: that the hotel did not own or control its own garage but had to rely on a commercial garage, I think the opinion is correct. This condition was fulfilled by Mrs. Armes constructively handing the keys to the bellboy. I agree that Mrs. Armes telling the boy that the keys were in the car in answer to his question as to where the keys were was a direction to go and get them. It was a direction for only one purpose which the boy and Mrs. Armes both understood. When the boy got the keys in his possession by taking control of them in the car he did so as a servant of the hotel. The hotel held him out for the purpose of performing the service of procuring the keys and taking them to the one whose duty it was to attend to the disposal of the car. When the boy procured the keys they must be considered in the possession of the hotel just as a piece of luggage procured from the car by the boy. The condition above italicized was then fulfilled and the car was under the care and control of the hotel. *Calye's case*, 8 Rep. 63 [Calye's case, 3 Bac. Abr. 664, 4 Maule & Sel. 306, 8 Barn. & Cres. 9.] *Clute* v. *Wiggins*, 14 Johns. 175, 7 Am. Dec. 448; *Mason* v. *Thompson*, 9 Pick. 280, 20 Am. Dec. 471; *Piper* v. *Manny*, 21 Wend. 282; *Jones* v. *Tyler*, S. C. N. & M. 576, 3 L. J. K. B. 166.

This was a bailment at least for the purposes of delivering it to a commercial garage. But we do not in this case have the question of the hotel's responsibility if it had been turned over to a commercial garage. It never got there because of the conversion by the bellboy which must be considered the conversion by the hotel. The implications of the case of *Andrew Jackson Hotel Company* v. *Pratt,* 19 Tenn. App. 360, 89 S. W 2d 179, are to the effect that it would still have been infra hospitium. See also *Clute* v. *Wiggins,* supra. If it was infra hospitium the hotel was liable to Mrs. Armes for the return of the car or its value, barring destruction by act of God, public enemy or Mrs. Armes' own negligence, by none of which the car was lost.

Even though the strict doctrine of infra hospitium is not applied in this case, I think the hotel is liable. If the car was delivered to the hotel only for the purpose of taking it to a commercial garage and such be not considered infra hospitium for that purpose, it was at least an ordinary bailment *for that purpose.* Being a bailment for that purpose the servant of the hotel and, therefore, the hotel, failed to carry out the terms of the bailment. It drove the car on a trip not within the purpose of the bailment and wrecked it. That involves a loss of the car because of an affirmative breach of the bailment contract and not a loss as in the case of *Romney* v. *Covey Garage,* 100 Utah 167, 111 P. 2d 545, when the car was lost by neglect of the bailee. It is not necessary in this case to prove negligence. The plaintiff having paid the Armes estate it was entitled to be subrogated to the right of the estate against the hotel and recover from the latter as held in the opinion.