OPINION OF THE COURT
Herman Cahn, J.
Defendant moves for summary judgment dismissing the complaint, or in the alternative, for an order limiting Hilton’s liability pursuant to General Business Law § 203-a. Plaintiffs cross-move for an order compelling discovery.
*868 On November 29, 1990, plaintiffs Dr. Samuel and Mrs. Mia Penchas were in the process of ending their five-day stay at the hotel, when they became the victims of an apparently well-rehearsed and well-orchestrated scam in the driveway of the Hilton Hotel in midtown Manhattan.
The Penchases had already checked out of the hotel, and Mrs. Penchas had retrieved her jewelry from the hotel’s safe, when the livery cab they had ordered to take them to the airport arrived. The Hilton Hotel in midtown Manhattan has a driveway area that extends up to the door of the hotel itself. The driveway is U-shaped, so that cars can pull off the street, and up to the hotel, and then proceed back onto the street. Presumably, the building was designed in this way to allow for loading of luggage and to avoid the traffic congestion of the busy streets as well as to provide hotel guests with some shelter from the weather as they arrive and depart.
Mrs. Penchas had placed her valuables in a tote bag, which she held as the remaining luggage was loaded into the cab by Dr. Penchas and the hotel porter. As Mrs. Penchas began to get into the car, she first placed the tote bag on the back seat, towards the middle. After she had done so, but before she had fully entered the car, she felt a tug on her sleeve. A stranger motioned to some money lying on the sidewalk as if to suggest that she had dropped it. Mrs. Penchas told the stranger that the money was not hers, and turned back to the car. A second man then picked up the money and the two strangers "scurried off.”
At about this time, the hotel porter became suspicious. According to the deposition testimony, he stated, "[T]hey do this when they rob people.” When Mrs. Penchas looked back in the car for the bag containing her jewelry, it was gone.
A third individual, one who must have reached into the car to swipe the bag, was never seen, but Dr. Penchas and the porter gave immediate chase to the two men that they had seen. After a brief pursuit, they caught the two, and struggled with them in the street. At some point, it appears that both strangers pulled knives on their pursuers, who wisely retreated. The two men then escaped.
Plaintiffs plead two causes of action: (1) breach of Hilton’s duty of care to provide reasonable security to its guests in its driveway area; and (2) negligence and failure to exercise reasonable care by failing to provide a security system in the driveway area that would enable guests to receive immediate security assistance when it is called for.
*869 Defendant premises the motion for summary judgment on the argument that "the rule of absolute liability of an innkeeper for loss of property of a guest under the common law has always * * * been limited and applied to cases where the property was within the walls of the inn itself and not outside them” (Lader v Warsher, 165 Misc 559, 561 [Columbia County Ct 1937]), i.e., when the property was infra hospitium. Hilton argues that because the theft did not occur "in the lobby, hallways or in the room or rooms assigned to a guest” (General Business Law § 201 [1]), and because the Penchases had already checked out and were loading their bags into a private car "outside the walls of the hotel itself,” that Hilton owed them no duty, and therefore cannot be held liable for the loss.
Historically, innkeepers, and later hotels, have been held to a high level of care. Originally, this was because the highways were extremely dangerous, and inns were thought of as places of safe haven. A traveller placed himself in the care of the innkeeper for the night, paid the fee, and was thus entitled to a certain amount of protection from thieves and bandits, as well as from the elements. The innkeeper today is still required to provide reasonable protection for the safety of the guest.
"The common-law liability of an innkeeper for the loss of or injury to property upon his premises is dependant upon the existence of the relation of innkeeper and guest between the parties at the time of such loss or injury, and is coextensive with such relation.” (66 NY Jur 2d, Hotels, Motels, and Restaurants, § 67, at 78.) While it is true that the Penchases had checked out of the hotel at the time of the loss, "[i]t is not true that the relation of innkeeper and guest terminates as soon as the guest pays his bill and leaves the hotel with the intention of not returning, because he has thereafter a reasonable time in which to remove his baggage. Until such reasonable time has expired the innkeeper’s liability, so far as the baggage is concerned, remains the same as it was prior to the departure of the guest.” (Kaplan v Titus, 140 App Div 416, 418 [1st Dept 1910].) Therefore, the requisite relationship existed between the Hilton and the Penchases when the theft took place.
It has been noted that, "[s]ame difficulty is encountered in determining when the goods of a guest may be said to be infra hospitium [within the confines of this inn] where they are not within the physical confines of the inn proper.” (66 NY Jur 2d, Hotels, Motels, and Restaurants, § 69, at 79-80.)
*870 The First Department has held that a guest’s property was brought infra hospitium when a claim check for a trunk was turned over to a hotel representative with the request that the trunk be delivered to the hotel. In Davidson v Madison Corp. (231 App Div 421 [1st Dept 1931]), the Court reasoned: "The phrase infra hospitium appears to mean nothing more or less than that the property of the guest is brought within the precincts of the inn; or if not actually brought within the four walls, the goods come 'in the care and under the charge of the innkeeper’ (2 Bouvier Law Diet. [Rawle’s Rev.] p. 1565) * * * The weight of authority * * * hold[s] that the acceptance by the innkeeper or his representative of the baggage check of a guest makes the former liable as an innkeeper and not merely as a bailee, for the return of the check or the baggage if it has been received upon surrender of the check.” (Supra, at 426.)
Although the Court of Appeals was "not greatly impressed with the reasoning of these cases” (which the First Department cited), it affirmed the decision that the hotel was liable as an innkeeper, on other grounds (Davidson v Madison Corp., 257 NY 120, 123 [1931]).
The Supreme Court of Utah has found that: "The goods of a guest to be 'infra hospitium’ and render the innkeeper liable for its loss need not always be within the walls of the inn. See Maloney v. Bacon, 33 Mo. App. 501. It is sufficient if the goods are placed where the hotel by its acts has directed the goods to be placed.” (Merchants Fire Assur. Corp. v Zion’s Sec. Corp., 109 Utah 13, 16, 163 P2d 319, 320 [1945].)
The Court of Appeals of Tennessee adopted the analysis of another Tennessee court which had found that "where the innkeeper has been held liable for the guest’s automobile * * * either the Hotel directed the guest where to park on its premises or else accepted manual possession of the car for the purpose of parking or storage.” (Dispeker v New S. Hotel Co., 52 Tenn App 379, 393, 373 SW2d 897, 903 [1963], cert denied 213 Tenn 378, 373, SW2d 904 [1963].)
In addition to these cases, New York’s own law on the liability of property owners in general is instructive. Up until 1976, the level of responsibility owed by property owners depended on the relationship between the owner and the visitor. The landmark case, Basso v Miller (40 NY2d 233), established the single standard of reasonable care, whereby the owner of property is responsible to all those legally on the property to exercise reasonable care under the circumstances.
*871 In this case, summary judgment must be denied for several reasons. It cannot be said that, as a matter of law, the driveway area of the Hilton Hotel is not infra hospitium. The hotel is of a peculiar design. If the outer wall of the building were to continue to the ground, for example, the driveway area would be part of the lobby, and there would be no question as to liability. Whether or not the driveway was infra hospitium when the incident occurred is a question of fact in these circumstances.
In addition, the motion papers indicate that the hotel may not have exercised reasonable care under the circumstances. Several facts remain to be determined. According to the depositions, when Mrs. Penchas’ arm was initially pulled, the hotel porter stated "[T]hey do this when they rob people;” this might well indicate prior knowledge of danger by the hotel’s employee, and might well place the hotel in a situation where it knew, or should have known, of the danger to its guests. In any event, significant issues of fact remain, making summary judgment improper.
The provisions of General Business Law § 203-a do not apply to the facts of this case because they cover "the loss of or damage to property of a guest delivered to such keeper, his agent or employee, for transport to or from the hotel or motel” and limit an innkeeper’s liability when "a written receipt stating such value [in excess of $250] shall be issued by such keeper.” Neither situation has been alleged. Accordingly, defendant’s motion for an order limiting its liability pursuant to such statute is denied.
Defendant opposes plaintiff’s cross motion to compel discovery on the ground that "[a]t no time whatsoever has the defendant herein either failed to appear at a scheduled deposition or refused to produce a witness for deposition.” However, a motion pursuant to CPLR 3124 may also be based on a failure "to permit examination or inspection of property or things as provided by rule 3120” — in this case, documents pursuant to CPLR 3120 (a) (1) (i). "The CPLR directs that there shall be 'full disclosure of all evidence material and necessary in the prosecution or defense of an action.’ (CPLR 3101 [a].) * * * [t]his statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376 [1991].)
*872 Defendant is directed to respond to plaintiff’s discovery requests within 20 days of service of a copy of this order with notice of entry.
Accordingly, defendant’s motion is denied; plaintiff’s cross motion is granted.