Baldey & Lightner vs. Brackenridge.

No. 9815.

BALDEY & LIGHTNER VS. E. A. AND E. F. BRACKENRIDGE.

The plea of no cause of action must be judged by the averments of plaintiff's petition.

When a rule, taken upon the adverse party to show cause why certain depositions should not be read, has been made absolute, as shown by the minutes of the court, it is too late to urge objection to the service of the rule after the trial has begun and the evidence has been offered. Rule should have been taken to have the minutes corrected so as to conform to the facts.

Parties, though not partners *inter se*, may be such as to third persons.

When persons occupying relations to others as partners, have obtained undue advantages of the latter, by means of false representations and unlawful acts, they are answerable *in solido* for whatever loss has been incurred thereby, irrespective of their obligations as partners.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Chas. S. Rice* for Plaintiffs and Appellees.

*Gibson & Hall* for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J. Plaintiffs allege that their business consists in searching for, inspecting, obtaining information about and locating for purchasers, government lands, with a view to its uses for timber, agriculture and stock-raising.

That for furnishing the information, thus obtained, to purchasers, and in assisting them to procure titles, they received a price or consideration per acre.

They represent that, during the years 1883 and 1884, they had a contract with defendants—a firm or partnership, engaged in a similar business—whereby it was agreed that each firm " should share equally in the payment of the expenses in the search for, inspection of, obtaining information about and locating *certain lands* situated in Washington parish, in this State ; and such other expenses as should be incurred in finding purchasers," and in securing them titles to their lands.

That it was further stipulated in said contract that the price, consideration or commissions paid by each purchaser for the services, information and assistance received, should be equally divided between the contracting parties.

The plaintiffs claim that, under this contract, large tracts of timber lands were located, inspected, and the necessary information in respect thereto furnished, and purchasers secured and titles obtained for them.

That amongst others, Byron D. Hamlin purchased on February 8, 1884, 26,909.66 acres.

Henry Hamlin purchased on April 1, 1884, 9165.08 acres, and on the 15th of April, 1884, 5576.74 acres.

They charge that defendants received from said purchasers the price or consideration of 27½ cents per acre, aggregating $11,454 16, as compensation for services and information aforesaid, less $2082 57; but falsely represented to them—the plaintiff's herein—that they had only received from the said purchasers, as compensation, the sum of $7082 59, and out of which they paid to them $2500 01, and which they received and receipted for, acting under the belief that defendants' representations were *true*.

They now represent that same were false representations. They have been *cheated and defrauded* out of the sum of $2185 78 by defendants; they pray judgment for that sum, and interest, against the defendants as a firm and against the individual members thereof *in solido*.

The defendant, E. A. Brackenridge, tendered *in limine* the following exceptions, viz:

1st. " The petition discloses no cause of action.

2d. " That petition is vague and indefinite, as it does not set forth the terms of the *alleged contract* in so far as the services each party thereto was to perform," etc.

The exceptions were overruled, and E. A. Brackenridge filed an answer, in which he pleads the general issue, and denies that he is bound as a partner *in solido* with E. F. Brackenridge, and also denies that he was a partner of his.

He disclaims the *contract* set up by plaintiffs, but admits that all the lands alleged to have been sold were sold to the parties alleged, but the trades and sales were " entirely negotiated, arranged and effected by *E. F.* Brackenridge, and that plaintiffs did not pay, and have not paid, *one-half the expenses* incurred, and rendered no services in connection with said land business up to the time of effecting its sale."

He then alleges that a "full and fair settlement of said land business, in which plaintiffs and defendants had any material interest, was made after *careful explanation* and *full information given to plaintiffs;* and that the land could not and would not have been sold to said parties f plaintiffs had not agreed to take the sum of money *that they* received; and that plaintiffs were informed that such sales could not and would not be effected unless they would accept the sums that they receipted

for, and *which they agreed to, after full information* and the *true* statement of fact to them."

I.

In this Court defendants' counsel presses upon our attention his exception of no cause of action.

He argues that this is a suit by one partnership against another—the two forming a third—for the division or result of a *single partnership* transaction; and that it cannot be maintained, for the reason that the *only* right of action one partner has against another is for a full and final settlement of the affairs of the partnership, *inter sese.*

The *cause* of action must be ascertained from an inspection of the the plaintiffs' petition alone.

The quotations we have made from it clearly show that this is a suit for the revocation of an alleged fraudulent settlement, and for the recovery from the defendants of a difference due plaintiffs in pursuance of a commutative contract.

The exception was properly overruled.

II.

During the progress of the trial defendants' counsel objected and excepted to the reading in evidence of certain depositions of E. H. Darrah, B. D. Hamlin and Henry Hamlin, on the grounds that same had not been properly authenticated and filed.

The minutes of the court show that a rule to show cause had been seasonably taken by plaintiffs, and that same had been made absolute some months preceding the trial. If, as answered by the defendants' counsel, that rule had not been regularly served upon his client, it was his plain duty to have had the minutes corrected before the trial had begun. His silence amounted to a tacit admission of their correctness.

III.

The record furnishes the following information with regard to the partnership existing between the defendants:

1. They occupied an office with this sign over the door, viz: "E. A. & E. F. Brackenridge, dealers in pine and cypress lands."

2. They had blotting-paper, cards and envelopes in use, on which a similar announcement appeared.

3. They advertised themselves as partners in a newspaper called the "Northwestern Lumberman."

4. One of the plaintiffs testified that in all of his dealings with the defendants they spoke of themselves as partners.

5. Other witnesses who dealt with them testified that their transactions were with E. A. & E. F. Brackenridge, and not with the individuals.

6. They testify that in the course of their land transactions E. A. & E. F. Brackenridge gave them written guarantees, protecting them against loss, etc.

7. Charles Brackenridge, the son of E. A, and brother of E. F., swears, as a witness on part of defendant, thus:

Question. "Who was interested in the sale of that land outside of the government?"

Answer. "E. A. & E. F. Brackenridge."

Notwithstanding these *indicia* of the existence of a partnership between them, both defendants swear there was none.

In point of fact, there may have been no partnership, but that cannot affect the rights and claims of plaintiffs, who dealt with de fendants as partners, and upon the faith of their own acts and representations to that effect.

"Parties, though not partners *inter se*, may be such as to third persons." 4 R. 300.

"If one suffers his name to be used as an *ostensible* partner, although he be no partner, he becomes liable for partnership debts." 18 Ann. 631.

We think the liability of the defendants, as partners, clearly made out, and that there can be no allowance made in favor of E. F. Brackenridge for services, it is claimed he rendered, in the negotiation of the sales to the purchasers named.

## IV.

The defendant's answer expressly admits that all the lands alleged to have been sold, were sold to the parties named;" and it does not deny that they received as commissions 27½ per cent per acre on all lands sold, aggregating the sum of $11,454 16.

But this fact is impliedly admitted. He claims that he made a full and fair settlement of the land business, after careful explanation and full information had been given to plaintiffs; and that the land could not and would not have been sold, if plaintiffs had not agreed to accept the sum they did receive.

The controversy is thus narrowed to the truth or falsity of the statement made with plaintiffs.

The defendant claims that plaintiffs bound themselves to pay, among other things, such expenses as might be incurred in procuring purchasers; and alleges that E. F. Brackenridge and Charles Brackenridge rendered such services, and were entitled to the compensation paid them therefor.

Now, it is admitted in plaintiffs' petition, that E. H. Darrah was paid

five cents per acre, for such services, a sum aggregating $2500, and they urge no complaint against it. They admit that Charles Brackenridge was entitled to the compensation of $6 per day, for his services in hunting up and locating lands, and making estimates of them. But they dispute the payments claimed to have been made to Charles and E. F. Brackenridge for *other services*.

Our study of the record has led us to doubt that any such payment was ever made; but, if it was made, to believe that it was not a serious, real discharge of a recognized and valid debt, actually due; but only intended to defraud and deceive the plaintiffs.

Under this view of the evidence, plaintiffs are entitled to the additional amount they claim as their legitimate share of the profits of the joint adventure.

## V.

The defendants were, *quoad* their contract with plaintiffs, partners; but we are inclined to the opinion that it was an ordinary one, though possessing some of the features of a commercial partnership. But their relations, as partners, in respect to the plaintiffs, exercise control only over the relative rights of the parties as to the shares they were entitled to receive of the profits, and the portion of the expenses each was bound to pay.

But their obligation as partners is not the limit of defendants' liability in this case.

The proof has convinced us that defendants induced the plaintiffs, by false representations as to the price, and consideration paid by purchasers as commissions, to accept a smaller sum than was actually and really due, by $2,685.18; and on the plea of having made large expenditures, which had not in fact been made.

The district judge regarded the acts of defendants as unlawful; and that as both of them were shown to have participated in their commission, they were answerable *in solido* to the plaintiffs for the damages they had sustained thereby. R. C. C. 2324.

In this view his judgment was correct, and it is therefore affirmed.

Judgment affirmed.