ELLIS, Judge.
We have under consideration in this case a judgment of the District Court wherein it “ * * * ORDERED, ADJUDGED AND DECREED that the exceptions of prescription of one year filed by Drs. Thomas R. Jenkins, Jr. and Joseph P. Tomsula, defendants herein, be and the same are hereby maintained, and that the original and supplemental petitions be and the same are hereby dismissed as to the said Drs. Thomas R. Jenkins, Jr. and Joseph P. Tomsula.”
The lower court in its reasons for judgment has correctly set forth the necessary facts upon which it based its judgment and upon which this court must adjudge the correctness thereof upon this appeal. We therefore quote:
“REASONS FOR JUDGMENT
“The matter before this court is a plea of prescription of one year filed March *166 2, 1964, by Dr. Thomas R. Jenkins, Jr., and Dr. Joseph P. Tomsula, made defendants herein by plaintiffs’ third amended petition filed herein on January 17, 1964. It is necessary to recite a partial chronological history of the pleadings.
“Plaintiffs are husband and wife. Mrs. Burch is claiming damages for personal injuries for negligent administration to her of X-ray and radium therapy under the supervision of Dr. Leo M. Abraham, Dr. Thomas R. Jenkins, Jr. and Dr. Joseph P. Tomsula and Our Lady of the Lake Hospital. Mr. Burch is seeking reimbursement of medical expenses incurred and paid by him on behalf of his wife, Mrs. Burch.
“On March 19, 1959, the original petition was filed alleging that in March 1957 Mrs. Burch consulted and engaged Dr. Abraham for medical treatment; that she subsequently was referred to Dr. Jenkins for treatment; that X-ray and radium therapy was administered to her under the supervision of Dr. Abraham and Dr. Jenkins at Our Lady of the Lake Hospital; that the results of the treatment were kept from her and she first learned in June 1958 that her injuries and damages were caused by the negligence of Drs. Abraham and Jenkins and the hospital in the application of excessive X-ray and radium. It is alleged that the Hartford Accident and Indemnity Company was the public liability insurer of Dr. Abraham and that the Travelers Insurance Company was the insurer of Dr. Jenkins and the hospital. Only the two insurance companies were cited as defendants. Neither Dr. Abraham nor Dr. Jenkins nor the hospital was made a defendant. They were the only doctors mentioned in the original petition.
“One supplemental petition was filed asking for the case to be tried by a jury, and on July 22, 1960, the second amended petition was filed alleging that St. Paul Fire and Marine Insurance Company and not The Travelers Insurance Company, as originally alleged, was the insurance carrier for Dr. Jenkins, and his said insurer was made a defendant. A plea of prescription of one year was filed by St. Paul Fire and Marine Insurance Company, which plea was sustained and the suit dismissed as to that insurance company only.
“On January 17, 1964, the third amended petition was filed changing certain allegations of the original petition to say that Dr. Abraham referred plaintiff to Dr. Jenkins and Dr. Tomsula; that the X-ray and radium treatments were administered under the supervision of Dr. Abraham, Dr. Jenkins and Dr. Tomsula at Our Lady of the Lake Hospital and because of the negligence of the doctors and the hospital in specified particulars she was damaged. The original petition said she learned about her injuries and damage in June of 1958 and this allegation was not changed. In this third amended petition it is alleged that Dr. Jenkins and Dr. Tomsula and the hospital compose a partnership, but the partnership was not made a party defendant. Dr. Jenkins and Dr. Tom-sula were cited as additional new defendants in this third amended petition.
“On February 21, 1964, the fourth amended petition was filed by plaintiffs impleading the alleged partnership as a party defendant on the allegation that the partnership is liable for the torts of the partners, Dr. Jenkins, Dr. Tomsula and Our Lady of the Lake Hospital.
“Dr. Jenkins and Dr. Tomsula excepted to plaintiffs’ original and all the amended petitions on the ground that the cause of action set forth is prescribed by a lapse of one year from defendants’ treatment and from plaintiffs’ discovery of the condition of Mrs. Burch in June 1958.
“The only defendants' in this suit on January 17, 1964, when Dr. Jenkins and *167 Dr. Tomsula were first made defendants, were the public liability carrier of
Dr. Abraham and the public liability carrier of the hospital. Plaintiffs im-plead Dr. Jenkins and Dr. Tomsula as defendants over five and a half years after plaintiffs first learned of their alleged damages resulting from treatment administered nearly seven years before the citation of Dr. Jenkins and Dr. Tomsula as defendants. The time lapse is not important. It is a fundamental rule in this State that timely action against one solidary obligor interrupts the running of the liberative prescription against any other obligor who is liable in solido with the obligor against whom the action was timely brought.”
Based upon the above facts the District Court held the rule that timely action against one solidary obligor interrupts the running of the liberative prescription against any other obligor who is liable in solido with the obligor against whom the action was timely brought did not apply in this situation and assigned the following written reasons therefor, which we quote:
“Assuming there is liability on the part of Dr. Abraham, that liability, whatever it is, is solidary with his insurer, the Hartford Accident and Indemnity Company. Assuming there is liability on the part of the hospital, that liability, whatever it is, is solidary with its insurer, The Travelers Insurance Company. But there is no solidary liability as between the Hartford Accident and Indemnity Company and Our Lady of the Lake Hospital. There is no soli-dary liability as between The Travelers Insurance Company and Dr. Abraham. It is as simple as that, according to my view.
“The reason for this is, for instance, that the Hartford Accident and Indemnity Company has by its policy obligated itself to pay the debt of Dr. Abraham incurred within the coverage, but it has not obligated itself to pay the debt of the hospital, or of Dr. Jenkins or of Dr. Tomsula. Neither has The Travelers Insurance Company obligated itself to pay the liability of Dr. Abraham, or of Dr. Jenkins, or of Dr. Tomsula. This is true particularly under the allegations of the petition that Dr. Jenkins, Dr. Tomsula and the hospital are members of a partnership, the activities of which partnership and its members resulted in the alleged damages to plaintiffs. There is no evidence as to what kind of a partnership it is supposed to be, but it is safe to say that it is an ordinary partnership, so that any liability of each member would be only for a virile share. The insurer of one member is not obligated to pay any portion of the liability of another member. [LSA-] Civil Code 2091 defines an obligation in solido on the part of debtors as existing when all the debtors are obliged to the same thing. Therefore, the citation of the insurer of Dr. Abraham and of the insurer of the hospital did not interrupt the running of prescription in favor of Dr. Jenkins and Dr. Tomsula.
“There is no solidary liability as between either one or both of these insurance companies on the one hand and either Dr. Jenkins or Dr. Tomsula or both on the other hand.
“Therefore, the plea of prescription filed by Dr. Jenkins and Dr. Tomsula is maintained and the suit is dismissed as to these two defendants, exceptors, at the cost of plaintiffs.”
Counsel for plaintiffs in brief has set forth the following specifications of error in the judgment of the lower court, namely:
“SPECIFICATIONS OF ERROR
“I. THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO SOLIDARY LIABIL *168 ITY BETWEEN THE LIABILITY INSURER OF DR. ABRAHAM AND DR. JENKINS AND DR. TOMSULA.
“II. THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO SOLIDARY LIABILITY BETWEEN THE PARTNERSHIP COMPOSED OF DRS. JENKINS, TOM-SULA AND OUR LADY OF THE LAKE, AND THE INSURERS OF DR. ABRAHAM AND OUR LADY OF THE LAKE HOSPITAL.”
In disposing- of the plea of prescription, it is agreed that the facts as alleged in the original and all supplemental petitions are to be accepted as true. There is no doubt that under the allegations of fact Our Lady of the Lake, Dr. Abraham, Drs. Jenkins and Tomsula would be joint tort feasors. However, the only parties defendant in the original petition were the liability insurer of Dr. Abraham and Our Lady of the Lake Hospital, namely, Plart-ford Accident and Indemnity Company and The Travelers Insurance Company. The Travelers Insurance Company was also alleged to be the insurer of Dr. Jenkins in the original petition. However, this was an error as his liability insurer was the St. Paul Fire and Marine Insurance Company which was made a party by supplemental petition on July 22, 1960 and released by the sustaining of a plea of prescription filed on its behalf from which there was never any appeal. We are of the opinion that liability insurers of joint tort feasors are each liable in solido to the extent of their coverage and has been so held by jurisprudence.
In the case of Humphreys v. McComiskey, 159 So.2d 380, La.App. 4th Cir. 1964, that court considered a one year prescriptive plea. The plaintiff filed suit against Dr. McComiskey within the year, alleging that he had performed a tonsillectomy on her at Touro Infirmary on November 9, 1960. Plaintiff then filed a supplemental amending petition on November 7, 1962, in which she joined Touro Infirmary and its insurer, Employers Mutual Liability Insurance Company. A motion for summary judgment was filed by Touro Infirmary, asserting that it was a charitable, non-profit, eleemosynary institute, and therefore immune. This motion was sustained.
The plea of one year prescription filed by the Employers Mutual Liability Insurance Company, Touro’s insurer, was maintained by the lower court but reversed by the Court of Appeal with the following language :
“This dismissal of Touro because of its immunity does not have the effect of dismissing its liability insurer as its defense of charitable immunity is personal to Touro and may not be claimed by Employers. Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132; Lusk v. United States Fidelity & Guaranty Co., La.App., 199 So. 666. Employers Mutual Liability Insurance Company of Wisconsin is, therefore, in the position of a joint tort-feasor with Dr. McComiskey.
“The timely institution of a suit against a joint tort-feasor interrupts the running of prescription as to the other tort-feasors and a suit filed against the latter, or its insurers, more than one year after the accident, was not barred. LSA-C.C. Arts. 2097, 3536; Ensminger v. Great Atlantic and Pacific Tea Co., La.App., 134 So.2d 686.
“A consideration of all the pleadings filed herein lead us to the conclusion that the case as it now stands presents a case sounding in tort against joint tort-feasors, provided the allegations are sustained by the evidence. We, therefore, think that the provision of LSA-C.C. Art. 2097 must prevail. We conclude that the district court erred in sustaining the plea of prescription filed by Employers.”
*169 Counsel for exceptors state with all respect that the court in the Humphreys case did not discuss the law on joint tort feasor relationship, but simply made the bare statement that the individual doctor and the insurer of the hospital were debtors in solido and that suit against the former interrupted the prescription of one year against the latter. Further, that had there been a discussion of the point, the reasons of the lower court in the case at bar would have come under scrutiny and “we feel would have been accepted.” They further contend that in the Humphreys case even if the original suit against the individual doctor had interrupted prescription against the insurer of the hospital, it did not suspend this prescription indefinitely. And that the supplemental petition naming the hospital’s insurer was filed within a year from interruption of the one year prescription brought about by the filing of the original petition. They make the same observation as to the case of Ensminger v. Great Atlantic and Pacific Tea Co. et al., 134 So.2d 686, decided by the Second Circuit in 1961, however, they cite no authorities to support this argument. In the case of Wilson v. King, 145 So.2d 128, at page 130, the Fourth Circuit Court of Appeal stated:
“Prescription is interrupted by the filing of a suit on the cause of action in a court of competent jurisdiction. LSA-R.S. 9:5801.
“Prescription is interrupted by judicial demand and such interruption works a suspension during pendency of the suit. Federal Insurance Co. v. T. L. James & Co., La.App., 69 So.2d 636.”
Counsel for plaintiffs has given us a rather detailed discussion of Ensminger v. Great Atlantic and Pacific Tea Co. et al., supra, and we take the liberty of quoting same:
“Another decision pertinent to the issues presented herein is Ensminger v. Great Atlantic and Pacific Tea Co., 134 So.2d 686 (La.App. 2 Cir. 1961), in which Mr. and Mrs. Ensminger sued to recover damages resulting from an accident occurring on December 18, 1958, on the premises occupied by the defendant, Great Atlantic & Pacific Tea Company. Also named as defendant in plaintiffs’ petition filed December 17, 1959, was the liability insurer of Great Atlantic & Pacific Tea Company. These defendants filed a third party petition against Employers Liability Assurance Corporation, insurer of Mr. and Mrs. Baird, owners of the premises.
On January 28, 1960, plaintiffs im-pleaded as defendant, Employers, but failed to allege any negligence on the part of the lessors. By second supplemental and amending petition, plaintiffs alleged acts of negligence attributable to the lessors. Employers’ plea of prescription asserted that plaintiffs’ claim against the lessors had prescribed since more than one year had passed since the date of the accident, December 18, 1958, and the filing of the second supplemental and amending petition.
“The trial court sustained the exception of prescription on/the theory that the original petition stated a different cause of action from that filed in the second supplemental petition, and hence prescription had run, relying on Sizeler v. Employers’ Liability Assurance Corporation, Ltd., 102 So.2d 326 (La.App.Orl.1958).
“The appellate court reversed this judgment, and held that the same cause of action was involved in both petitions, and the relationship of joint tort-feasors existed among the original defendants and Employers, joined subsequent to the one year period:
“ ‘It is not disputed that the supplemental petition of July 29, 1960, alleged liability on the part of the lessors, which if sustained by proof, would make lessors joint tort feasors along with A and P. Plaintiffs argue pre *170 scription was interrupted as to Employers by virtue of its suit being filed against A and P within the one year limitation. “A suit brought against one of the debtors in solido interrupts prescription with regard to all.” LSA-C.C. Art. 2097; Sewell v. Newton, et al., La.App. Orleans, 1934, 152 So. 389; Brignac v. Fontenot et al., La.App. Orleans 1957, 96 So.2d 66; Arnett et al v. Maryland Casualty Company, et al., La.App. 1st Cir., 1959, 116 So.2d 110.
“ 'Plaintiffs elected to proceed under the direct action statute LSA-R.S. 22:655, and have made Employers a defendant without joining the lessors. The statute giving the injured parties a right to proceed directly against the tort feasor or his liability insurer or both, for judgment, makes the obligation of. the insurer and the assured a debt in solido. Martin v. Mud Supply Company, Inc., La.App. Orleans, 1959, 111 So.2d 375, affirmed 1960, 239 La. 616, 119 So.2d 484.
* * * * * *
“ ‘In the instant case prescription against Employers was interrupted on December 17, 1955, when a cause of action arising in tort was stated and service obtained on A and P and Aetna. The supplemental petition of July 29, 1960, alleged liability of Employers as a joint tort feasor along with A and P and Aetna. Both of said defendants were solidarily liable to the plaintiffs upon the cause of action, and, therefore, we think the provisions of LSA-C.C. Art. 2097 must prevail. We, therefore, hold that the sustaining of the plea of prescription as against plaintiffs, was error.’
“Ensminger v. Great Atlantic and Pacific Tea Company, supra, [134 So.2d] at pages 692-693.”
Our attention has also been called to the case of Thomas v. Lobrano, La.App., 76 So.2d 599, wherein our brethren of the Second Circuit considered the suit by the plaintiff therein against the doctor and a sanitarium and their liability insurer. An exception of no right of action was sustained as to the sanitarium; however, an exception of no cause of action on behalf of the sanitarium and its insurer was overruled. A plea of prescription on behalf of defendants, Lobrano (the doctor) and the insurer, was overruled after trial of the issue, which ruling was seriously contested by defendants as constituting error. After trial on the merits, there was judgment rejecting the plaintiffs’ demands from which they prosecuted an appeal to the Second Circuit Court of Appeal. The plea of prescription was tried with evidence and the Court of Appeal affirmed the correctness of the action of the District Court in overruling the plea. It was not based upon the same grounds as in the case at bar.
On the merits, the court held the insurer of the sanitarium liable in solido, after stating that the relationship existing between the doctor and the sanitarium was in the nature of a partnership. We will quote that portion of the testimony we believe pertinent or bearing upon the issue now before the court in the case at bar, to wit:
“According to the uncontroverted testimony of both Dr. Lobrano and the business administrator of the Sanitarium, the relationship existing was in the nature of a partnership. Under the agreement the Sanitarium furnished adequate space for the accommodation of the operation of the x-ray department, carried the employees thereof on its payroll, furnished and maintained the equipment, etc. After deduction of operating expenses the net profits remaining were divided equally between the Sanitarium and Dr. Lobrano. Under these facts we think it is clear that the relation which existed was that of a partnership.
“On the basis of our findings of fact, as above set forth, we have, in effect, *171 adjudged Dr. Lobrano guilty of neglect with respect to his failure to keep appropriate and accurate records of treatment. It is so clear, under our appreciation of the case, that this neglect is equally chargeable to the Sanitarium that we find it unnecessary to enter into a discussion of details. Under this conclusion it must be considered that the Sanitarium and Dr. Lobrano were joint tort-feasors and either, or both, are solidarily liable. In Abrego v. Tri-State Transit Co., La.App., 22 So.2d 681, 682, the court declared that all persons 'whose negligence concurred in and contributed to the injury are liable in solido * * In construing the liability of co-trespassers as a solidary obligation, under the provisions of Article 2324 of the LSA-Civil Code, the Supreme Court declared that the liability for damages caused by the negligence of two or more joint tort-feasors constituted a solidary obligation. Huguet v. Louisiana Power & Light Co., 196 La. 771, 200 So. 141, and cases therein cited.
“It therefore follows that the insurer of the Sanitarium is answerable under the terms and provisions of its policy contract.”
It is true that the insurer of the sanitarium and the doctor were one and the same. However, this is immaterial insofar as the argument that an insurer of one joint tort feasor is not liable in solido with another joint tort feasor. We believe that it is immaterial to the final decision of the case as to whether the sanitarium and the doctor were to be considered as an ordinary partnership. In this case the court found that the doctor and the sanitarium were equally chargeable with neglect of their duty with respect to failure to keep appro-, priate and accurate records of treatment which contributed to or were the proximate cause of the damage and therefore they were joint tort feasors and solidarily liable.
In Favalora v. Aetna Casualty & Surety Company, 144 So.2d 544, this court had occasion to consider a suit for personal injuries sustained as the result of a fall by the plaintiff in the radiology room of the Baton Rouge General Hospital and suit was instituted against a doctor and his insurer, and the hospital and its insurer to recover damages for the injuries. After an examination and discussion of the facts, this court held that the hospital and the doctor breached a duty of care owed to the plaintiff and held the doctor, his insurer and the insurer of the hospital liable in solido. In this case the court stated:
“Under the circumstances shown it is clear that the negligence of the Hospital’s employees concurred in and contributed to plaintiff’s injury thereby rendering defendant Hartford liable in solido with Aetna and the latter’s insured.
“We believe it unnecessary to place the hospital’s liability on the basis of partnership as counsel for appellants suggests was done in the Lobrano case, supra. Nor do we find it necessary to construe the relationship of the parties to be a joint venture as was held in. Fossier v. American Printing Co., Ltd., La.App., 130 So.2d 529. We believe the sounder view to be that both the hospital and radiologist breached a duty of care owed plaintiff herein. The law of this state is well settled to the effect that all persons whose negligence concurred in and contributed to a plaintiff’s injuries are liable in solido therefor. Abrego v. Tri-State Transit Co. [La.App], 22 So.2d 681; Huguet v. Louisiana Power & Light Co., 196 La. 771, 200 So. 141; LSA-C.C. Article 2324.”
We believe the question now under consideration was definitely settled in the case of Hidalgo v. Dupuy, 122 So.2d 639, wherein this court considered a plea of *172 prescription. We take the liberty of quoting at length from this decision:
“I. Prescription.
“The defendant’s plea of prescription is based upon the circumstance that the accident occurred on November 3, 1950, whereas the present suit was not filed until April 12, 1954. It is thus urged that this tort action has prescribed, having been filed more than one year after the date of the injury. LSA-Civil Code Arts. 3536, 3537.
“The plaintiff, however, relies upon the institution of a suit in the federal courts on November 2, 1951, one day before prescription had accrued, as an interruption of prescription. The sole defendant in that suit, filed in the United States District Court for the Western District of Louisiana, was the Fidelity and Casualty Company of New York, the defendant’s liability insurer at the time of the accident. The federal courts dismissed this suit on the ground that a 'no action’ clause of the policy (preventing a direct action against the insurer until a judgment had been obtained against the insured fixing the amount of the damages) was a valid defense to the suit, since the action had occurred in Alabama and since the Louisiana statute (LSA-R.S. 22:655) permitting such direct actions despite policy clauses to the contrary was by its terms expressly limited to actions upon accidents occurring in Louisiana. Hidalgo v. Fidelity & Cas. Co., 5 Cir., 1953, 205 F.2d 834, affirming D.C.W.D. La., 104 F.Supp. 230. Thus the present suit was brought within nine months of the date of the judgment finally dismissing the federal suit, so that the plaintiff’s claim did not prescribe before the present suit was filed, if the filing of the federal suit interrupted prescription.
“In our opinion, the trial court herein correctly overruled the defendant’s plea of prescription.
“The timely filing of the suit in federal court against the insurer prevented the accrual of prescription against that defendant. LSA-R.S. 9:5801 provides: ‘The filing of a suit in a court of competent jurisdiction shall interrupt all prescriptions affecting the cause of action therein sued upon, against all defendants, including minors and interdicts.’ (Italics ours.)
******
“Since the filing of the federal suit interrupted prescription against the defendant’s insurer, it also interrupted prescription against the insured, the present defendant. ‘A suit brought against one of the debtors in solido interrupts prescription with regard to all,’ LSA-Civil Code Article 2097. See Sewell v. Newton, La.App.Orl., 152 So. 389.
“Although the defendant contends that the insurer and its insured were not solidary obligors, so that suit against the one could not interrupt prescription against the other, we are constrained to disagree.
“Under LSA-Civil Code Article 2091, ‘There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor.’ By the terms of its policy the defendant’s insurer had agreed, subject to the limits and conditions of the policy, ‘To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.’ (Policy coverage A.) By the terms of the insuring agreement, both the insurer and its insured are *173 obligated for the same debt (namely the insured’s tort liability covered by the policy), and payment made by either of them satisfied the liability of the other, so that within the statutory definition they are solidary obligors for the payment of the damages for which the insured is legally liable within the coverage of the insurance policy.
* * * * * *
“While it is true that, as the defendant contends, a solidary obligation is not presumed and must be expressly stipulated, LSA-C.C. Art. 2093, it is likewise well settled that where two debtors are by contract each bound for the whole of the same debt, the legal effect of the intention of the parties as manifested by the language and the terms of the agreement is to create a solidary obligation, despite the failure of the parties to specifically characterize their obligation as ‘in solido’. J. I. Case Threshing Machine Co. v. Bridger, 133 La. 754, 63 So. 319; Rusca & Cunningham v. Hammett, La.App. 2 Cir., 195 So. 642; E. George Rogers & Co. v. Black, La.App. 1 Cir., 155 So. 403; Dodd v. Lakeview Motors, Inc., La.App. 2 Cir., 149 So. 278; North British Mercantile Ins. Co. v. Patterson, [& Shirley], 1 Cir., 5 La.App. 327. See also: Teutonia Nat. Bank v. Wagner, 33 La.Ann. 732; Jacobs v. Williams, 12 Rob. 183; Mayor, etc. New Orleans v. Ripley, 5 La. 120, 25 Am.Dec. 175; 2 Planiol, Treatise on the Civil Law (LSLI Translation, 1959), Sections 736, 741.”
Thus we see that the above case clearly held that the suit against the insurer interrupted prescription against the insured. We are therefore of the opinion that the filing of the suit in this case against the insurers of two alleged joint tort feasors interrupted prescription as to all such debtors as they were all liable in solido.
We will now consider the second specification of error that the trial court erred in holding that there was no solidary liability between the partnership composed of Dr. Jenkins, Dr. Tomsula and Our Lady of the Lake Plospital and the insurers of Dr. Abraham and Our Lady of the Lake Hospital. The lower court held that under the allegations of the petition that Dr. Jenkins, Dr. Tomsula and Our Lady of the Lake Plospital were members of a partnership whose activities and those of its members resulted in the alleged damages to plaintiffs, that the citation of the insurer of Dr. Abraham and of the hospital did not interrupt the running of prescription in favor of Dr. Jenkins and Dr. Tomsula for the partnership would be an ordinary partnership so that any liability of each member would be only for a virile share and therefore the insurer of one member was not obligated to pay any portion of the liability of another member, which would be contrary to the provisions of LSA-Civil Code Article 2091 defining an obligation in solido on the part of debtors as existing when all the debtors are obliged to the same thing.
We cannot agree with the above holding, other than the partnership was an ordinary partnership between Drs. Jenkins, Tomsula and Our Lady of the Lake Hospital under the allegations of the petition. It is true that in Louisiana the members of an ordinary partnership are bound jointly and not severally for firm obligations based on contract but when a partnership is answerable for the tort of any member the liability of the partners is joint and several, i. e., in solido. In Volume 68 of C.J.S. at page 636, § 181, under the subject of “Partnership” we find the following:
“Liability in Tort
“As a rule, when a partnership is answerable for the tort of any member, the liability of the partners is joint and several, or, as sometimes expressed, in solido, and, where persons who occupy relations to others as partners participate in the commission of an un *174 lawful act, they have been held liable, in solido, for the damages sustained thereby, under a statute providing that he who assists or encourages or causes another person to do an unlawful act is answerable, in solido, with that person, for the damages caused by such act.12
“12. La. — Baldey v. Brackenridge, 2 So. 410, 39 La.Ann. 000.”
In the case of Baldy and another v. Brackenridge and another, 39 La.Ann. 660, 2 So. 410, cited above under footnote 12 of the quotation from the 68 Corpus Juris Secundum, which involved the commission of an unlawful act by members of an ordinary partnership, the court stated and held:
“5. The defendants were quoad their contract with plaintiffs partners; but we are inclined to the opinion that it was an ordinary one, though possessing some of the features of a commercial partnership. But their relations as partners, in respect to the plaintiffs, exercise control over only the relative rights of the parties as to the shares they were entitled to receive of the profits, and the portion of the expenses each was bound to pay. But their obligation as partners is not the limit of defendants’ liability in this case. The proof has convinced us that defendants induced the plaintiffs, by false representations as to the price and consideration paid by purchasers as commissions, to accept a smaller sum than was actually and really due them, by $2,-085.18, and on the plea of having made large expenditures, which had not in fact been made. The district judge regarded the acts of defendants as unlawful; and that, as both of them were shown to have participated in their commissions, they were answerable in solido to the plaintiffs for the damages they had sustained thereby. Rev. Civil Code, art. 2324.”
Article 2324, LSA-Louisiana Civil Code reads:
“He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.”
In the case of Guarantee Trust & Safe Deposit Co. v. E. C. Drew Inv. Co. et al., 107 La. 251, 31 So. 736, in considering the liability of a commercial partnership and its members for the commission of a tort by one of its members, the court held that the individual members of a firm are liable for the tort of one of the members of the firm, although they had no knowledge thereof, where such tort was committed in the course of the partnership business, and for the benefit of the partnership. In this case the defendant partnership, E. C. Drew Investment Company, was engaged in the business of buying and selling lands and timber and of acting as agent for the owners of land and timber in selling. It bargained with its codefendant, Manning S. Maguire, for the sale to him of timber and referred him to its agent, Lee Harris, one of the defendants, to point out the timber, and agree upon a price. Harris pointed out the timber of plaintiff, and Maguire cut, removed, and sold the same. And hence this suit for damages against all of said parties, and against the members of the E. C. Drew Company individually, in so-lido, upon allegations of conspiracy to depredate upon plaintiff’s lands. The court found that the Drew Company and the individual members thereof must be held liable to the plaintiff as trespassers in bad faith as the sale of the timber was made advisedly, and it was made in the course of the partnership business, by the managing partner of the firm, in the name of and for the benefit of the firm, and the price went into the “coffers” of the firm and that under these facts all the partners “are liable.” The defenses were that Harris was not authorized to sell the timber on the land of the plaintiff but only the timber *175 on the land of E. C. Drew Investment Company and on the part of the individual members of the firm, that they had no knowledge of the transaction, and as a consequence, were not parties to it and not responsible for it. The court specifically held:
“The want of knowledge on the part of a member of a firm of the tort of its copartner will not be good ground for exemption from liability from such tort, if, as in this case, the tort was committed in the course of the partnership business, and in the name of and for the benefit of the partnership; and especially if the partnership profited by the transaction.”
In the above case the court discussed the case of Stockwell v. United States, 13 Wall. 531, 20 L.Ed. 491, in which the defendants were sued as members of a partnership for double the value of certain shingles imported by the partnership without payment of import duties. The debt was by way of penalty for breach of the revenue laws, and the fraud upon the government was the act of only one of the members of the firm. The other members had no knowledge of it, but the firm received the shingles, and sold them in due course of business. It was argued that the innocent members of the firm could not be charged with knowledge of the fraud of their associate. The court held that they were liable, and in the course of the opinion said:
“ ‘It is not seriously denied that in civil transactions a principal or a partnership is affected by a knowledge of the agent or copartner, and that the knowledge of the agent is in law attributed to his principal, as well as that of the partner to all the members of ■the firm. Nor is it much insisted that a principal or a copartner is not liable for the tort of an agent or copartner done without his knowledge or authority, in suits brought by third persons to recover compensation or indemnity for loss sustained in consequence of the tort; but it is argued that the rule does not apply to the case of suits for a penalty.’ ”
And again:
“ ‘That, as a general rule, partners are liable to make indemnity for the tort of one of their number, committed by him in the course of the partnership business, is familiar doctrine. * ”
It cannot be argued that the solidai'y liability in this case was based upon the fact that this was a commercial partnership. The court clearly distinguished between the liability in “civil transactions” and liability by the partnership and its members for the commission of a tort by a member without the knowledge or authority of the principal or copartners.. This is made clear by another statement of the court in this case on page 739 of 31 So. when the court was discussing the liability based upon good or bad faith of the trespassers and we quote:
“The E. C. Drew Investment Company and its members are therefore liable for the timber when sold at Monroe, namely, $4.50 per thousand feet. The defendants being held for a tort, their liability is in solido. Article 2324, Civ. Code.” (Emphasis added.)
Further, the case of Baldy v. Brackenridge, supra, which involved the liability of members of an ordinary partnership clearly nullifies any argument that the liability of partners for the commission of a tort by a member of the partnership is based upon whether it is an ordinary or commercial partnership when in the former instance the partners may be held jointly and not severally liable for firm debts, while in the latter instance the partners may be held severally as well as jointly liable. Liability for tort is governed by the law covering tort feasors which applies to all transgressors whether they be a member of a partnership or not. They are liable in so-lido.
The above law was followed by this court in the case of Futch v. Addison, et al., 12 *176 La.App. 535, 126 So. 590, decided 1930, in which the plaintiff sued two members of a commercial partnership for a tort committed by one member without the knowledge of the other. In this case, Addison and Thompson were engaged in the business of buying standing timber, cutting it into saw logs and selling and delivering the logs. The delivery was made by means of a truck and trailer which belonged to the partnership and was operated by Addison. He was delivering a load of logs to the Natalbany Lumber Company and left his trailer at night with a load of logs on the highway and plaintiff ran into it. Plaintiff sued and both Addison and Thompson denied they were partners, however, the court found they were, and Thompson urged that, even if they were partners, Addison left the track on the highway and that he was not present when it was done and was “therefore not liable for the tort of his copart-ner.” The court held:
“We find that they are liable in solido for the tort of one of the members of the firm, committed in the course of the transaction of the partnership business, as occurred in this case, although the other partner may not have been present. Birdsall v. Bemiss, 2 La.Ann. 449; New Orleans Drainage Co. v. De Lizardi, 2 La.Ann. 281; Baldey & Lightner v. Brackenridge, 39 La.Ann. 660, 2 So. 410; Parsons on Partnership (4th Ed.) § 100, pp. -; Ruling Case Law, vol. 20, subject, Partnership, § 126, p. 914.”
Therefore, considering the allegations of the various petitions filed herein and for the above and foregoing reasons, we hold that the filing of the original petition in which the liability insurer of Dr. Abraham and Our Lady of the Lake Hospital were made defendants interrupted prescription and worked a suspension thereof during pendency of this suit against all parties sued as joint tort feasors and specifically the partnership composed of Our Lady of the Lake Hospital, Drs. Jenkins and Tomsula. It is therefore ordered that the judgment of the lower court be and the same is hereby reversed and that the plea of prescription filed by Dr. Jenkins and Dr. Tomsula be and the same is hereby overruled at the cost of exceptors and the case remanded to the District Court to be proceeded with according to law.
Reversed and remanded.